SPARLING PLASTIC INDUSTRIES, INC v SPARLING

SPARLING v DeMARCO

Docket Nos. 190180, 190181. Submitted January 6, 1998, at Detroit. Decided May 22, 1998, at 9:00 A.M.

Sparling Plastic Industries, Inc., and Anthony and Peter DeMarco brought an action in the Wayne Circuit Court against Robert D. Sparling (Sparling), alleging conversion, a violation of MCL 600.2919a; MSA 27A.2919(1), and civil conspiracy. The action arose out of a stock transaction in which the plaintiffs and Katherine and Mary Ann DeMarco (hereafter the appellants), through the negotiation of two promissory notes, agreed to purchase all the outstanding stock of Sparling Plastic Industries, Inc., from Sparling. In conjunction with the sale, the appellants received all the corporate assets. Contemporaneous with the stock transaction, the parties negotiated a lease agreement providing that the appellants would lease from Sparling the property on which the business was located. Fourteen months later, Sparling reentered the premises because there had been only one monthly payment on one of the notes, none on the other, and three monthly lease payments. Sparling found that the electrical service had been disconnected because of nonpayment and that equipment and supplies had been removed from the premises. Sparling remained in possession a short time, sold the remaining equipment, and leased the premises to a third party.

Sparling and his wife, Evangeline Sparling, brought an action in the Wayne Circuit Court against Peter, Katherine, Anthony, and Mary Ann DeMarco, alleging breach of the two promissory notes and the lease agreement. The trial court, John R. Kirwan, J., consolidated the two cases for a bench trial and found in favor of the Sparlings with regard to every claim. The court entered a judgment against all the appellants with regard to the first promissory note. The judgment included statutory and judgment interest and credited the appellants an amount for the sale of the company assets by Sparling. The court entered a judgment against Anthony DeMarco only with regard to the second promissory note. The court found the appellants who had signed the lease, Anthony, Peter, and Mary Ann DeMarco, liable for breaching the lease, and found all the appel-

lants liable for Sparling's cost of the cleanup after retaking possession of the premises. Sparling Plastic Industries, Inc., and Anthony and Peter DeMarco appealed from the court's order denying their motion for summary disposition. (Docket No. 190180). Peter, Katherine, Anthony, and Mary Ann DeMarco appealed from the judgment in favor of the Sparlings, the court's order denying their motion for additional or amended findings of fact, and the court's order denying their motion for partial summary disposition. (Docket No. 190181). The appeals were consolidated.

The Court of Appeals *held*:

1. The court did not err in finding that a genuine issue of material fact existed with regard to whether the stock transaction fell within one of the exception provisions of § 402 of the Uniform Securities Act, MCL 451.802; MSA 19.776(402), thereby making registration of the securities unnecessary. The court properly denied summary disposition with regard to the appellants' argument that § 301 of the act, MCL 451.701; MSA 19.776(301), required Sparling to register the securities before selling them to the appellants and, because the securities were not registered, § 410 of the act, MCL 451.810; MSA 19.776(410), allowed the appellants to rescind the stock sale transaction and recover the consideration given for the stock and attorney fees.

2. The court properly denied the appellants' motion for summary disposition that alleged that because Sparling behaved as if he had a security interest, he should have abided by the laws applicable to secured parties and given notice to the appellants before seizing the property and selling the assets. Because the appellants were seeking equitable relief, which depends on the factual circumstances of the case, and Sparling's claims could have been supported by evidence presented at trial, the motion was properly denied.

3. Sparling did not prove that a § 402 exemption to the § 301 requirement of registering a security before selling it applied in this case. The appellants were entitled to prevail on their claim that, pursuant to § 410, Sparling was liable to them for the consideration paid for the securities plus costs and attorney fees because he sold the securities in violation of § 301.

4. Section 415 of the Uniform Securities Act, MCL 451.815; MSA 19.776(415), requires construction of the act to coordinate its interpretation with the related federal regulation.

5. The United States Supreme Court has rejected the "sale of business" doctrine under which, when a stock purchase constitutes the purchase of a business, the restrictions and requirements imposed on the sale of stock do not apply. The Supreme Court stated that if

an instrument bears the usual characteristics of stock, then it falls within the definition of a security, is within the purview of the federal securities act, and is subject to all the same requirements and restrictions. The stock at issue in this case possessed all the usual characteristics of a security and the stock transaction was subject to the registration requirements of the Uniform Securities Act.

6. The court erred in denying the appellants' claim under § 410. The appellants were entitled to rescind the transaction and seek statutory damages. The part of the court's order regarding this claim must be reversed and the matter must be remanded for the calculation of the appellants' damages. The court must set off from that amount the value of the equipment removed by the appellants and any damage to the plant to which Sparling is entitled.

7. The court did not clearly err in finding that Sparling did not make any untrue statements of material fact or omit any material fact in offering or selling the stock, was not liable for conversion, and had not violated the purchase agreement.

8. The court did not clearly err in finding that Sparling did not breach the lease agreement and that Anthony, Peter, and Mary Ann DeMarco were the tenants under the lease and personally liable for the lease payments.

9. Sufficient evidence supports the court's finding that the appellants abandoned the premises.

10. An accord and satisfaction did not arise between the parties when Sparling sold the remaining assets to a third party.

Affirmed in part, reversed in part, and remanded.

GRIBBS, J., dissenting in part, stated that the trial court's order with regard to the appellants' claim under § 410 should not be reversed and that the trial court correctly applied the "sale of business" doctrine. Federal court interpretations of the federal securities acts, relied on by the majority in this case, are not binding on this Court. The federal securities acts were not intended to apply to a sale of a business that included all the stock of the business in a closely held corporation. The Michigan Uniform Securities Act plainly contemplates the regulation of passive investments and not the acquisition of an entire business. The trial court correctly found the transaction here to be a sale of a business. The judgment of the court should be affirmed in its entirety.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — EQUITY.

Summary disposition of a claim seeking equitable relief, which depends on the factual circumstances of the case, is improper if the claim can be supported by evidence presented at trial.

2. SECURITIES REGULATION — UNIFORM SECURITIES ACT — REGISTRATION OF SECURITIES.

> It is unlawful for a person to offer or sell any security in Michigan unless the security is registered under the Uniform Securities Act or the security or transaction is exempt from registration under the act; a person who sells a security in violation of these requirements of the act is liable to the purchaser for the consideration paid for the security plus interest and attorney fees; the burden of proof that an exemption applies is on the party claiming the exemption (MCL 451.701, 451.802, 451.810; MSA 19.776[301], 19.776[402], 19.776[410]).

3. SECURITIES REGULATION — UNIFORM SECURITIES ACT — JUDICIAL CONSTRUCTION — SALE OF BUSINESS DOCTRINE.

> The Uniform Securities Act must be construed to coordinate its interpretation with the related federal regulation; the United States Supreme Court has stated that an instrument that bears the usual characteristics of stock falls within the definition of a security, is within the purview of the Securities Act of 1933, 15 USC 77a *et seq.*, and is subject to all the same requirements and restrictions; the United States Supreme Court has rejected the "sale of business" doctrine, which provides that when a stock purchase constitutes the purchase of a business, the restrictions and requirements imposed on the sale of stock do not apply; stock sold in Michigan that possesses all the usual characteristics of a security is subject to the requirements and restrictions of the Uniform Securities Act even where the sale is of all the outstanding stock of the business (MCL 451.501 *et seq.*; MSA 19.776[101] *et seq.*).

4. REPLEVIN — ACTIONS — BUSINESSES.

> A civil action may be brought to recover possession of any goods or chattels that have been unlawfully taken or detained and to recover damages sustained by the unlawful taking or detention; such an action may not be maintained by a person who, at the time the action is commenced, does not have a right to possession of the goods or chattels; a party may not bring an action for replevin for the value or good will of a business, but may with regard to the physical assets of a business (MCL 600.2920; MSA 27A.2920).

5. ABANDONED AND LOST PROPERTY — REQUIREMENTS.

> Two requirements must be met to establish the abandonment of property: it must be shown that there is an intent to relinquish the property and there must be external acts that put that intention into effect; nonuse alone is insufficient to prove abandonment.

6. ACCORD AND SATISFACTION — AGREEMENT.

>An accord and satisfaction may be effected by tender and acceptance of an amount less than the amount claimed to be due where the tender is accompanied by an explicit and clear condition indicating that, if the money is accepted, it is accepted in discharge of the whole claim.

*Plunkett & Cooney, P.C.* (by *Eric B. Gaabo*), for Sparling Plastic Industries, Inc., and Peter, Katherine, Anthony, and Mary Ann DeMarco.

Before: KELLY, P.J., and HOOD and GRIBBS, JJ.

HOOD, J. In Docket No. 190180, plaintiffs-appellants Sparling Plastic Industries, Inc., and Anthony and Peter DeMarco appeal as of right from the March 25, 1994, trial court order denying their motion for summary disposition. In Docket No. 190181, defendants-appellants Peter, Katherine, Anthony, and Mary Ann DeMarco appeal as of right from the August 22, 1995, trial court judgment in favor of plaintiffs Robert and Evangeline Sparling and the October 6, 1995, trial court order denying their motion for additional or amended findings of fact. Appellants also appeal from a January 22, 1993, order denying their motion for partial summary disposition. This order was issued in lower court case no. 91-126755CK, which was dismissed and subsequently refiled as case no. 93-326751CK. The appeals were consolidated. We affirm in part, reverse in part, and remand.

These cases were consolidated before a bench trial pursuant to a stipulation by all parties. The controversy arose out of a sale of stock transaction in which appellants, through the negotiation of two promissory notes, for $400,000 and $12,600 respectively, agreed to purchase all the outstanding stock in Sparling Plastic Industries, Inc., from appellee Robert

Sparling (hereafter Sparling). In conjunction with this sale, appellants received all the corporate assets. Contemporaneous with the stock transaction, the parties negotiated a lease agreement that provided that appellants would lease the property on which the business was located. The promissory notes and the lease agreement were negotiated in March 1991. By May 1992, appellants had made only one of the monthly payments on the $400,000 note, no payments on the $12,600 note, and only three of the monthly lease payments. Sparling therefore reentered the premises. When he did, he found that the electrical service had been disconnected because of nonpayment and that equipment and supplies had been removed from the premises. Sparling remained in possession for a short while before selling the remaining equipment and leasing the premises to a third party.

In Docket No. 190180, appellants Sparling Plastic Industries, Inc., and Anthony and Peter DeMarco filed a complaint against Sparling, alleging conversion, a violation of MCL 600.2919a; MSA 27A.2919(1), and civil conspiracy. In Docket No. 190181, Sparling and his wife, Evangeline, filed a complaint against appellants Peter, Katherine, Anthony, and Mary Ann DeMarco, alleging breach of the two promissory notes and the lease agreement. After a bench trial on the consolidated cases, the trial court found in favor of the Sparlings on every claim. The trial court entered judgment against all appellants in the amount of $574,638.73 with regard to the first promissory note, which included statutory and judgment interest, and a credit to appellants for $70,000 for the sale of the company assets by Sparling. The trial court also

entered judgment against appellant Anthony DeMarco only in the amount of $19,378.25 with regard to the second promissory note. The trial court also found the appellants who signed the lease, Anthony, Peter, and Mary Ann DeMarco, liable for $42,406.18 for breaching the lease and found all appellants liable for $44,316.07, which was Sparling's cost of cleanup after retaking possession of the premises.

Appellants raise numerous issues on appeal, several of which we have combined for our consideration. First, appellants argue that they were entitled to summary disposition because, pursuant to § 301 of the Uniform Securities Act, MCL 451.701; MSA 19.776(301), Sparling was required to register the securities sold to appellants before the sale. Because the securities were not registered, appellants argue that, pursuant to § 410 of the Uniform Securities Act, MCL 451.810; MSA 19.776(410), they could rescind the stock sales transaction and recover the consideration given for the stock and attorney fees. We disagree that summary disposition should have been granted. The trial court did not err in finding that a genuine issue of material fact existed with regard to whether the stock transaction between appellants and Sparling fell within one of the exemption provisions in the Uniform Securities Act thereby making registration of the securities unnecessary. *Paul v Lee*, 455 Mich 204, 210; 568 NW2d 510 (1997).

Appellants also argued in a motion for summary disposition below that although Sparling did not perfect a security interest in the property that was leased to appellants, Sparling behaved as if he had a security interest when he seized the property and all the assets on the leased premises. They claimed that

because Sparling behaved as if he had a security interest, he should have abided by the laws applicable to secured parties and should have given appellants notice before seizing the property and selling the assets. Because Sparling did not, appellants claimed that they were entitled to summary disposition regarding his claims. The trial court properly denied this motion for summary disposition because appellants were seeking equitable relief, which depends on the factual circumstances of the case. Sparling's claims could have been supported by evidence presented at trial and, therefore, the trial court properly denied appellants' motion for summary disposition. *SSC Associates Ltd Partnership v General Retirement System of Detroit*, 192 Mich App 360, 364-365; 480 NW2d 275 (1991).

Next, appellants argue that they were entitled to rescind the stock transaction pursuant to MCL 451.810; MSA 19.776(410), which provides, in part, that a person who sells a security in violation of § 301 of the Uniform Securities Act, MCL 451.701; MSA 19.776(301), is liable to the purchaser for the consideration paid for the security plus interest and attorney fees.

Section 301 provides as follows:

> It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 402.

Section 402 of the Uniform Securities Act, MCL 451.802; MSA 19.776(402), describes all the securities and transactions that are exempt from the requirement of registering under § 301. A review of the twenty-one exemptions enumerated in the act does

not reveal an exemption that was applicable to the transaction in this case. Moreover, if Sparling wanted to defend this claim by claiming that an exemption applied, he was required to prove that an exemption applied. MCL 451.802(c); MSA 19.776(402)(c). He did not do so at any time during the trial. Therefore, appellants were entitled to prevail on this claim.

We disagree with the proposition argued by Sparling in the trial court that the "sale of business" doctrine applies to the case at bar.[1] Under the "sale of business" doctrine, when a stock purchase constitutes the purchase of a business, the restrictions and requirements imposed on the sale of stock do not apply. MCL 451.815; MSA 19.776(415) provides that the Uniform Securities Act should be construed to coordinate its interpretation with the related federal regulation. It is therefore appropriate to examine how the similar federal provision has been interpreted. This issue was addressed in an almost identical factual situation in *Landreth Timber Co v Landreth*, 471 US 681; 105 S Ct 2297; 85 L Ed 2d 692 (1985). In that case, the United States Supreme Court rejected the sale of business doctrine, stating that if an instrument bears the usual characteristics of stock then it falls within the definition of a security and, therefore, is within the purview of the Securities Act of 1933, 15 USC 77a *et seq.*, and is subject to all the same requirements and restrictions. *Landreth*, at 686. In the case at bar, uncontroverted evidence was introduced at trial that the stock at issue possessed all the usual characteristics of a security. Applying the reasoning in *Landreth*, we conclude that the stock transaction

---

[1] Sparling has not filed briefs in either of the appeals before this Court.

in this case was subject to the registration requirements of the Uniform Securities Act.

The trial court erred in denying appellants' claim under MCL 451.810; MSA 19.776(410). Appellants were entitled to rescind the transaction and seek statutory damages. We therefore reverse the order of the trial court with regard to this claim and remand for the calculation of appellants' damages pursuant to the statute. However, the trial court shall set off from that amount the value of the equipment removed from the premises by the appellants and any damage to the plant to which Sparling was found to be entitled.

Appellants also argue that they were entitled to recover the compensation paid for the stock under MCL 451.810(a)(2); MSA 19.776(410)(a)(2), which provides that a person who offers or sells a security by making any untrue statement of a material fact or by the omission of a material fact to a buyer who does not know of the untruth or omission and in the exercise of reasonable care could not know of the untruth or omission is liable for the consideration paid for the security plus interest and attorney fees. A review of the record does not reveal that the trial court clearly erred in finding that Sparling did not make any untrue statements of material fact or omit any material facts. *People v Truong (After Remand)*, 218 Mich App 325, 330; 553 NW2d 692 (1996).

Appellants next argue that the trial court erred in finding that Sparling did not convert their property in violation of MCL 600.2920; MSA 27A.2920, when he seized the property without first notifying them. MCL 600.2920; MSA 27A.2920 provides, in part, as follows:

(1) A civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention, subject to the following conditions:

*          *          *

(c) An action may not be maintained under this section by a person who, at the time the action is commenced, does not have a right to possession of the goods or chattels taken or detained.

MCL 600.2920; MSA 27A.2920 applies only to tangible property. A party may not bring an action for replevin for a business or for the good will of a business. *Powers v Fisher*, 279 Mich 442, 449; 272 NW 737 (1937). Therefore appellants cannot recover under this section for the value of the business. Although this provision can be applied to the physical assets of the business, appellants were not in possession of the property at the time Sparling reentered the premises. Appellants had abandoned the property and had stripped the premises of most of the machinery and office equipment before Sparling's reentry. Moreover, there was undisputed testimony that appellants made only one payment on the promissory notes and only a few payments on the lease. Sparling was entitled to reenter the premises pursuant to the lease agreement when appellants failed to make payments in accordance with the terms of the lease. Because Sparling properly took and maintained possession, the trial court correctly determined that he was not liable for conversion.

Next, appellants argue that the trial court erred in finding that Sparling did not breach the purchase agreement. We disagree. Appellants first claim that

Sparling violated ¶ 7(B) of the purchase agreement, which assured that there were "no suits, governmental proceedings, or litigation pending" that might affect the ownership or use of the assets or property owned by the company. In support of this claim, appellants argue that Sparling knew that there were hazardous wastes located on the property and these wastes were present in violation of Department of Natural Resources regulations. They also point out that, at the time of the transaction, there was an existing fire code citation for failing to properly store flammable materials on the premises of the company. At trial, there was conflicting testimony regarding how much hazardous waste was on the premises at the time appellants purchased the company. The trial court found that, although there were environmental problems and code violations, these would constantly occur because of the nature of the business and would have to be constantly corrected. It concluded that Sparling made no misrepresentation regarding these issues. This finding was not clearly erroneous and, therefore, we are required to accept it. *Beason v Beason*, 435 Mich 791, 803; 460 NW2d 207 (1990).

Appellants next claim that Sparling violated ¶ 7(F) of the purchase agreement. In ¶ 7(F), Sparling warranted that no representation or warranty contained in the agreement contained false statements or omissions of material fact. Appellants argue that Sparling violated this paragraph by misstating the amount of the company's accounts receivable and payable, its current tax liabilities, the value and existence of the company's assets and inventory, and the nature of his customer relationships. There was conflicting testimony regarding these issues at trial. Therefore, the

trial court did not clearly err in finding that the value of the accounts receivable and inventory were not misrepresented in the purchase agreement and that appellants had every opportunity to evaluate the assets of the business before purchasing it.

Finally, appellants claim that Sparling violated ¶ 9 of the purchase agreement. Paragraph 9 prohibited Sparling from competing with the business for a period of five years. Appellants argue that this provision was violated after Sparling reentered the premises. They allege that he ran the business for a short period before he sold the assets of the business to a third party. As previously noted, there was testimony that at the time Sparling reentered the premises, the appellants had abandoned them. The electricity had also been disconnected and items of furniture and equipment had been removed to the extent that regular operations could not be resumed. On these facts, it was clear that appellants were not operating the business at the time Sparling reentered the premises and attempted to salvage what remained of the plant and the business. Therefore, Sparling was not violating the agreement by competing with appellants.

In sum, the record supports the conclusions reached by the trial court and thus, the trial court's findings that Sparling did not breach the purchase agreement were not clearly erroneous. There was conflicting testimony presented at trial regarding all these issues. Due regard shall be given to the trial court's superior opportunity and ability to judge the credibility of witnesses. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 99; 535 NW2d 529 (1995).

Appellants also raise issues concerning their liability under the lease agreement. First they argue that

Sparling breached the lease agreement by misrepresenting the condition of the premises and viability of the inventory left on the premises. We disagree, as did the trial court. Appellant Anthony DeMarco admitted visiting the premises several times before the purchase. Although he claims that he did not fully inspect the backyard area or the drums because the area was muddy and snow-covered, he had ample opportunity to do so. Further, Sparling testified that the inventory was usable and that the waste products were recyclable. Second, appellants take issue with the trial court's findings of fact that individual appellants Anthony DeMarco, Peter DeMarco, and Mary Ann DeMarco were the tenants under the lease. Although these individual appellants argue that they signed the lease only as officers of the company and not as personal guarantors, there is nothing on the face of the lease that supports this argument. In the body of the lease, Sparling Plastic Industries, Inc., was named as the tenant, but on the page where the signatures appear, these individual appellants signed as individuals under the heading "Tenant." We find that the trial court did not clearly err in finding that Sparling did not breach the lease agreement and that these individual appellants were personally liable for the lease payments.

Next, appellants complain that the trial court's finding that appellants had abandoned the leased premises before Sparling's reentry was erroneous. They argue that the evidence presented at trial established that the premises were not abandoned. Appellants rely on *Ludington & N R Co v Epworth Assembly*, 188 Mich App 25; 468 NW2d 884 (1991). Two requirements must be met to establish abandonment. First, it

must be shown that there is an intent to relinquish the property and, second, there must be external acts that put that intention into effect. *Id.* at 33; *Van Slooten v Larsen*, 410 Mich 21, 50; 299 NW2d 704 (1980). Nonuse alone is insufficient to prove abandonment. *Emmons v Easter*, 62 Mich App 226, 237; 233 NW2d 239 (1975). We agree with the trial court that there was sufficient evidence to support a finding that appellants abandoned the leased premises. Specifically, the evidence showed that Detroit Edison had disconnected the electricity because of nonpayment and that, when Sparling reentered the premises, several pieces of equipment were missing as well as trucks, office furniture, copiers, files, tools, and computers, the value of which was between $60,000 and $70,000.

Appellants also claim on appeal that Sparling's act of selling the remaining assets to a third party amounted to an accord and satisfaction, which precluded an award of damages. We disagree. Appellants argue that they attempted to rescind the contract before Sparling's reentry. They conclude that there was an accord and satisfaction because Sparling reentered and released the premises and sold the assets of the business to another party after their offer of rescission.

"[Accord and satisfaction] relates to a situation where one party tenders an item in full satisfaction of a claim and the other party accepts the thing tendered. In such a situation, an accord and satisfaction may arise regardless of the lack of an agreement between the parties. An accord and satisfaction may be effected by payment of less than the amount which is claimed to be due if the payment is tendered by the debtor in full settlement and satisfaction of the claim. In order to effect an accord and satisfaction

under such circumstances, the tender must be accompanied by an explicit and clear condition indicating that, if the money is accepted, it is accepted in discharge of the whole claim." [*Nationwide Mut Ins Co v Quality Builders, Inc*, 192 Mich App 643, 646; 482 NW2d 474 (1992), quoting *Fuller v Integrated Metal Technology, Inc*, 154 Mich App 601, 607-608; 397 NW2d 846 (1986).]

Appellants cite no facts and this Court does not find any within the record that would support the conclusion that an accord and satisfaction had arisen between the parties. Appellants did not offer to pay any money for the outstanding promissory notes; they only claim that they attempted to rescind the contract by offering to return the shares of stock. This never occurred. There was no evidence that appellants offered a payment to Sparling in satisfaction of the amounts due on the purchase agreement or on the lease. Appellants have therefore failed to establish the elements of an accord and satisfaction.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

KELLY, P.J., concurred.

GRIBBS, J. (*concurring in part and dissenting in part*). I respectfully dissent from only those portions of the majority opinion that reverse the order of the trial court with regard to the appellants' claim under MCL 451.810; MSA 19.776(410) and reject the sale of business doctrine.

There are no Michigan cases dealing with this specific issue, and federal court interpretations of the federal securities acts are not binding on this Court. *Dep't of Commerce v DeBeers Diamond Investment,*

*Ltd*, 89 Mich App 406, 410; 280 NW2d 547 (1979). After review of the *Landreth* decision of the United States Supreme Court,[1] I find myself in agreement with the dissent by Justice Stevens.

In his dissent, Justice Stevens argued that the federal securities acts were not intended to apply to the sale of a business that included all the stock of the business in a closely held corporation. He would have affirmed the unanimous decision of the case by the United States Ninth Circuit Court of Appeals. 731 F2d 1348 (CA 9, 1984). The Ninth Circuit Court of Appeals applied the sale of business doctrine and held that the *Landreth* sale was a routine commercial transaction and that the sale of one hundred percent of the stock of a closely held corporation was not a transaction involving a security within the meaning of the securities acts because the buyer assumed full control of the corporation and was not an "investor" expecting profits from the efforts of others.

The circuit court opinion in *Landreth* noted that the federal courts and numerous commentators have been divided for many years on the sale of business doctrine and on the question whether stock purchased as part of a business is a "security" within the meaning of the federal securities acts. The circuit court opinion cited many cases, as well as law review and bar journal articles dealing with the issue. 731 F2d 1351-1352, ns 2-10.[2]

---

[1] *Landreth Timber Co v Landreth*, 471 US 681; 105 S Ct 2297; 85 L Ed 2d 692 (1985).

[2] The circuit court's footnote 2, in its entirety, provides:

2. *Compare* Seldin, *When Stock is Not a Security: The "Sale of Business" Doctrine Under the Federal Securities Laws*, 37 Bus Law 637 (1982); Thompson, *The Shrinking Definition of a Secur-*

In its written opinion, the circuit court in *Landreth* reasoned:

> The sale-of-business doctrine rests upon the premise that the Acts apply only to investment transactions, and not to commercial or entrepreneurial transactions. *See e.g., Sutter v Groen,* 687 F2d [197, 201 (CA 7, 1982)]. The doctrine

---

*ity: Why Purchasing All of a Company's Stock is Not a Federal Securities Transaction,* 57 N Y U L Rev 225 (1982); Note, *The Security Status of Stock Transfers Incident to the Purchase of a Business: The "Sale of Business" Controversy in the Aftermath of* Golden v Garafalo, 47 Alb L Rev (1983); Note, *Function Over Form: The Sale of Business Doctrine and the Definition of "Security,"* 63 B U L Rev 1129 (1983); Note, *The Sale of Business Doctrine: A Decade After* Forman, 49 Brooklyn L Rev 1325 (1983); Comment, *Acquisition of Businesses Through Purchase of Corporate Stock: An Argument for Exclusion from Federal Securities Regulation,* 8 Fla St U L Rev 295 (1980); Note, *The Sale-of-Business Doctrine*—Golden v Garafalo, 1983 B Y U L Rev 201 (1983); Note, *The Second Circuit Rejects the Sale of Business Doctrine,* 57 Tul L Rev 715 (1983) (all endorsing the sale of business doctrine) *with* Black, *Is Stock a Security? A Criticism of the Sale of Business Doctrine in Securities Fraud Litigation,* 15 U C D L Rev 325 (1983); Hazen, *Taking Stock of Stock and the Sale of Closely Held Corporations: When is Stock Not a Security?,* 61 N C L Rev 393 (1983); Karjala, *Realigning Federal and State Roles in Securities Regulation through the Definition of a Security,* 1982 U Ill L Rev 413; Prentice & Roszkowski, *The Sale of Business Doctrine: Relief from Securities Regulation or a New Haven for Welshers?,* 44 Ohio St L J 473 (1983); Rapp, *Federal Securities Laws Should Protect Some Purchases of All or Substantially All of a Corporation's Stock,* 32 Case W Res 595 (1982); Comment, *A Criticism of the Sale of Business Doctrine,* 71 Calif L Rev 974 (1983); Note, *Repudiating the Sale-of-Business Doctrine,* 83 Colum L Rev 1718 (1983); Note, 61 Wash U L Q 659 (1983) (repudiating the sale of business doctrine). *See also* Fitzgibbon, *What is a Security?—A Redefinition Based on Eligibility to Participate in the Financial Markets,* 64 Minn L Rev 893 (1980); Note, *Recent Ninth Circuit Developments in Securities Law,* 13 Loy L A L Rev 985 (1980); Comment, *Securities Regulation: Application of the Federal Securities Laws to the Sale of a Closely Held Corporation,* 22 Washburn L J 406 (1983); Note, *Continuing Confusion in the Definition of a Security: The Sale of a Business Doctrine, Discretionary Trading Accounts, and Oil, Gas, and Mineral Interests,* 40 Wash & Lee L Rev 1225, 1280 (1983). [731 F2d 1351.]

derives from [*United Housing Foundation v Forman*, 421 US 837; 95 S Ct 2051; 44 L Ed 2d 621 (1975)], in which the Court stated:

"The focus of the Acts is on the capital market of the enterprise system: the sale of securities to raise capital for profit-making purposes, the exchanges on which securities are traded, and the need for regulation to prevent fraud and to protect the interest of investors."

421 US at 849; 95 S Ct 2059. The court added "Congress intended the application of these statutes to turn on the economic realities underlying a transaction, and not on the name appended thereto.". . .

. . . Although the transaction involves stock, the economic realities reflect acquisition of a business, not passive investment, and the Acts therefore do not apply. . . .

[B]oth the sale-of-business doctrine and the risk capital test. . . . reject a literal reading of the statute in favor of an inquiry into the economic realities of the underlying transaction [731 F2d 1352.]

In a recent opinion, the Michigan Supreme Court found that a statute may "plainly contemplate" authority for an extraordinary procedure even where a literal or specific proviso is absent.[3] In my review of the Michigan version of the Uniform Securities Act, MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.*, I conclude that the statute plainly contemplates the regulation of passive investments and not the acquisition of an entire business. The sale at issue included various equipment (eventually repossessed and sold by Robert Sparling for $70,000), accounts receivable amounting to approximately $40,000, an inventory estimated at $95,000, and a bank account of approximately $15,000, in addition to other assets.

---

[3] *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998).

The trial court correctly concluded that the "arms-length transaction" was the sale of a business and that the appellants "took over the business" and operated the business for more than a year before ceasing operations entirely and abandoning the property.

I would affirm the entire judgment of the Wayne Circuit Court.