*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* VELASQUEZ, Minor.

---

MARIO VELASQUEZ-TOMAS, Guardian of LMV

        Appellant,

FOR PUBLICATION
November 10, 2022

No. 360057
Ionia Probate Court
LC No. 2021-000494-GM

---

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

BOONSTRA, J. (*dissenting*).

I respectfully dissent. By reversing the probate court's decision in this case, the majority sanctions the abandonment of all notions of due process and our role as an error-correcting court. It facilitates the use of a by-design one-sided process (both in the probate court and in this Court) to foist factual findings (which no one has had an opportunity to rebut) upon the courts—notwithstanding the proper role of trial courts to evaluate witness credibility and the weight to be given to the evidence presented. And it allows itself to be used to further a particular political agenda—under which different living standards in other countries necessarily and conclusively equate to "abuse" and "neglect" justifying immigration.

In my view, the probate court did not clearly err by failing to find that LMV's[1] reunification with his mother was "not viable due to abuse, neglect, abandonment, or a similar basis found under state law," see 8 USC 1101(a)(27)(J)(i), or by failing to make factual findings regarding whether it was not in LMV's best interest to be returned to his country of origin, see 8 USC 1101(a)(27)(J)(ii). Further, even if the probate court erred in addressing (or declining to address) those issues (in the absence of an opportunity for LMV's mother to respond), this Court should

---

[1] LMV will turn eighteen years of age on January 23, 2023.

not—in the first instance—make the factual findings set forth in this Court's order, when the probate court did not address the issues first. See 8 USC 1101(a)(27)(J)(ii).

The Immigration and Nationality Act of 1990 defines a "special immigrant," in relevant part, as follows:

(J) an immigrant who is present in the United States--

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that--

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter . . . . [8 USC 1101(a)(27)(J).]

As the majority opinion describes, a minor immigrant may be found to be a Special Immigrant Juvenile (SIJ) under the act. To achieve SIJ status, a state court must first make factual findings under 8 USC 1101(a)(27)(J)(i) and (ii); if it does so, the minor may then apply to the federal government for SIJ status. See generally *In re LFOC*, 319 Mich App 476; 901 NW2d 906 (2017), quoting *In re Estate of Nina L*, 2015 Ill App 152223, ¶ 15; 397 Ill Dec 279; 41 NE3d 930 (2015). The majority takes issue with the probate court's refusal to make the necessary predicate findings to enable LMV to apply for SIJ status. I disagree.

As a threshold matter, the majority states that the probate court "erred by concluding that notice was sufficient to grant the guardianship, yet insufficient for purposes of the SIJ proceedings." I disagree with that characterization of the record. The probate court stated in relevant part:

> I suspect [the mother] has not been served. But rather than delay these proceedings, because [LMV] certainly needs someone to have 1egal authority over him, I will grant the guardianship. However, in cases like this, I always indicate that should the mother, upon becoming aware of this, want to contest it and claim she was not given proper notice, I will give her that opportunity.

From this statement, it is clear that the probate court, despite its reservations about the service of process procedure used in this case,[2] elected to grant the guardianship out of necessity, while specifically reserving LMV's mother's right to challenge the lack of notice at a later date; in other words, the majority is incorrect when it states that the probate court affirmatively concluded that sufficient notice had been given. I note that this was a non-adversarial proceeding; there was no party challenging the guardianship based on allegedly deficient service of process or the absence of an interested party. See MCR 5.125(C)(20). The grant of guardianship has not been challenged on appeal. I would not stretch the probate court's conditional grant of the guardianship petition so far as to find—on that basis— an abuse of discretion in its denial of the motion for special findings.

More importantly, regardless of whether LMV's mother was provided with proper notice of the proceedings, the probate court was not required to accept LMV's testimony in its entirety merely because it was not contradicted by another witness's testimony; nor was the court required to find that this testimony supported making a factual finding under the USCIS, merely because no party argued otherwise. It is the fact-finder's job to consider a witness's credibility and what weight to give to the evidence presented. See *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). "It is fundamental that the fact finder may accept in part and reject in part the testimony of any witness." *Adkins v Home Glass Co*, 60 Mich App 106, 111; 230 NW2d 330 (1975). In my view, the majority ignores these precepts and substitutes its judgment for that of the probate court in re-weighing the evidence. See *Wolfe*, 440 Mich at 514-515, quoting *People v Palmer*, 392 Mich 370, 375-376; 220 NW2d 393 (1974) (" '[An appellate court] must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact. . . . Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony.' ") (alteration in *Wolfe*).

The probate court did not clearly err by declining to make the factual finding that LMV's reunification with his mother was "not viable due to neglect, abandonment, or a similar basis found

---

[2] The record shows that a copy of the petition and motion for special findings was sent by first-class mail to "Aldea Rodeo, Cuilco, Huehuetenango, Guatemala." Cuilco is the fourth largest municipality in the Guatemalan department of Huehuetenango with an area of 592 square kilometers and a population of approximately 57,000 people, living in over a hundred "aldeas" or small villages; presumably, "Aldea Rodeo" is one of those villages. See https://aprende.guatemala.com/historia/geografia/municipio-cuilco-huehuetenango/ (last accessed November 2, 2022). In other words, the petition and motion were mailed to, at most, the village in which LMV's mother lived, without a street address. The record reflects no explanation for this lack of specificity despite LMV's uncle's testimony that he had remained in contact with his sister and that she agreed with the proposed guardianship.

under State law." See 8 USC 1101(a)(27)(J)(1). Although the majority focuses on evidence that it believes supports a finding of abuse or neglect, it does not discuss what evidence supported a factual finding that reunification was impossible due to that abuse or neglect. See 8 USC 1101(a)(27)(J). Statutory language should not be rendered nugatory. *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 591; 977 NW2d 128 (2021) (citation omitted). A reasonable reading of the language of 8 USC 1101(a)(27)(J) and the USCIS as whole supports the conclusion that the statute contemplates a *current* harm to the child from being reunited with his parents in his home country; if conditions of past neglect or even abuse have been sufficiently rectified, it is at least arguable that they do not support predicate findings under the USCIS. See *Id.* at 587.

Further, my review of the evidence relied upon by the majority does not leave me with the definite and firm conviction that a mistake was made. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). Regarding neglect, although LMV testified that he accompanied his mother to work from the age of eight, and began working in the fields by the age of twelve instead of going to school, there was no testimony or evidence presented that LMV's mother forced him to do so or that she failed to provide for his health or welfare "though financially able to do so." MCL 722.602(d). In fact, LMV testified that "We had no money to pay school." Further, the majority states that LMV was "exposed to chemical fertilizers and harvesting equipment," but I can find no mention of what type of fertilizer was used, or that LMV was "exposed" to any harvesting equipment more advanced than an axe or machete. And while LMV did testify that he had "little" food, that was in response to being asked if he had water or food while he was working; he later agreed that he was "getting more to eat" living with his uncle. LMV also testified to a time when he was injured while working and "couldn't work for a week." Although he stated that his mother did not get him medical care, he did not testify, nor was there other evidence provided, regarding what specific medical care he should have received, its availability in his region, and whether it was financially within his mother's means. While LMV's testimony establishes a certain amount of hardship and difficulty in his younger years, I find this evidence far from conclusive that LMV's mother neglected him, or that any neglect occurred despite LMV's mother possessing the financial means to provide adequate care.

Regarding abuse, LMV testified that his mother hit him with sticks and a belt when he did something she didn't like. He provided no further specifics or even a general sense of when these incidents occurred, how often, or their severity, other than stating "yes" when asked if his mother left marks when she hit him. Again, as the statute appears to contemplate a *present* danger to the child if reunited with his parent, I would find such specifics important. Further, no medical records or other such corroborating evidence was presented. I do not fault the probate court for failing to find that LMV's mother committed child abuse under Michigan law based on solely on LMV's abbreviated testimony. See MCL 722.602(d).

There was also evidence presented that LMV was able to stay home from work when sick (and possibly for other reasons as well, since he referred to being sick as "the most common" reason he stayed home), that his mother provided LMV's uncle with some form of written permission to make decisions on LMV's behalf, and that LMV's uncle had stayed in contact with LMV's mother. During the guardianship portion of the proceedings, there was no mention of abuse or neglect by LMV's mother; rather, LMV's uncle merely testified that she agreed with the guardianship and that he would like to provide LMV with "a better life here in the States." LMV's

uncle, despite being present, did not testify in support of LMV's abuse and neglect accusations. This evidence provides some support for the probate court's refusal to find that LMV had been abused, neglected, or abandoned.

On balance, I simply cannot find that the probate court, given its superior ability to judge the credibility of witnesses before it, see *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 716; 583 NW2d 232 (1998), clearly erred by declining to make the factual findings requested. Additionally, even if I agreed with the majority regarding the probate court's lack of findings under 8 USC 1101(a)(27)(J)(i), I would dissent from the majority's best-interest findings under 8 USC 1101(a)(27)(J)(ii). This Court is an error-correcting court, *Apex Labs Int'l, Inc v Detroit*, 331 Mich App 1, 10; 951 NW2d 45 (2020); it is not appropriate for us to make factual findings regarding an issue that the probate court declined to address. See *id.* at 10-11, citing *Autodie LLC v Grand Rapids*, 305 Mich App 423, 430-431; 852 NW2d 650 (2014). For this additional reason, I dissent from Section V(C) of the majority opinion.

For these reasons, I respectfully dissent.

/s/ Mark T. Boonstra