*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM B. SOLOMON, JR., FRANCES
SOLOMON, and CHRISTOPHER CIAPALA,

        Plaintiffs-Appellants,

v

SANILAC COUNTY ROAD COMMISSION and
TOWNSHIP OF LEXINGTON,

        Defendants-Appellees,

and

THE HEIRS AND ASSIGNS OF FREDERICK AND
MARION VAN FLETEREN,

        Defendants.

UNPUBLISHED
April 17, 2026
1:45 PM

No. 370796
Sanilac Circuit Court
LC No. 2023-039917-CZ

Before: GADOLA, C.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting defendants, Sanilac County Road Commission and Lexington Township, summary disposition of plaintiffs' quiet title claim under MCR 2.116(C)(7) and (C)(10). We affirm.

## I. FACTS

This case arises out of a dispute over the ownership of an approximately 330-foot section of a 66-foot right of way for Harrington Road[1] in Lexington Township. Harrington Road runs east

---

[1] The parties do not dispute on appeal that Harrington Road originally was a township section line road. In 1936, Lexington Township transferred the road to the Sanilac County Road Commission.

and west; near Lake Huron, Harrington Road crosses M-25, also known at that point as Lakeshore Road. East of M-25, Harrington Road becomes a gravel road for several hundred feet before it reaches a guardrail with a stop sign and a no parking sign. East of the guardrail, Harrington Road is neither paved nor gravel. Three hundred thirty feet east of the guardrail is Lake Huron; the beach begins approximately 130 feet east of the guardrail.

Plaintiffs Willaim B. Solomon and Frances Solomon own real property at 4989 Lakeshore Road in Lexington Township. The Solomon property is located on the north side of Harrington Road. Plaintiff Christopher Ciapala owns real property at 5005 Lakeshore Road, which is located on the south side of Harrington Road.

The Solomon property extends south to the center line of Harrington Road. The Ciapala property does not extend north to the center line of Harrington Road. The southern half of Harrington Road was part of the Ciapala property in 1938–1942, when it was owned by Frederick and Marion Van Fleteren, but the Van Fleterens transferred the land without including the southern half of Harrington Road.

In January 2023, plaintiffs initiated this lawsuit against the Sanilac County Road Commission, Lexington Township, and the heirs and assigns of Frederick and Marion Van Fleteren, seeking to quiet title to plaintiffs' properties. Plaintiffs sought a declaration that Harrington Road is not a public road or right of way east of the guardrail. Plaintiffs alleged that Harrington Road east of M-25 was never properly dedicated to public use and that the road east of the guardrail does not satisfy Michigan's highway-by-user statute, MCL 221.20. Plaintiffs further alleged that the Road Commission abandoned Harrington Road east of the guardrail by failing to maintain that portion of the road, by decertifying the easternmost 204.6 feet of the road, by allowing private citizens to erect obstructions on the eastern portion of the road, and also because the eastern portion of the road is not often used by the public.

Plaintiffs also alleged that Ciapala has possessed and maintained the southern 33 feet of Harrington Road in a manner that was open, notorious, exclusive, continuous, and hostile for over 15 years, which would entitle plaintiff Ciapala to that parcel. This latter claim was against the heirs and assigns of the Van Fleterens (the Van Fleterens); plaintiffs successfully sought entry of a default when the Van Fleterens did not respond to the suit.

After discovery, plaintiffs moved for summary disposition of their claims under MCR 2.116(C)(10). The Road Commission moved for summary disposition of plaintiffs' claims against it under MCR 2.116(C)(7) and (10), and Lexington Township joined in the Road Commission's motion. The trial court denied plaintiffs' motion with respect to the Road Commission and the Township, finding that Harrington Road was either a section line road or a highway by user, and

---

The road was a certified county local road from 1936 to 1950. Sometime after the enactment of 1951 PA 51, the Road Commission decertified 204.6 feet of the road nearest Lake Huron. In approximately 1993, the Road Commission installed the guardrail and stop sign to prevent vehicular travel on the unimproved 330 feet of the roadway sloping down to Lake Huron. Beyond the guardrail is 125.4 feet of certified roadway, then 204.6 feet of decertified roadway, which is essentially made up of the sandy beach leading to Lake Huron.

that the Road Commission had not abandoned the eastern portion of the road. The trial court granted summary disposition in favor of the Road Commission and Lexington Township under MCR 2.116(C)(7) and (C)(10) and later entered a default judgment granting quiet title to the southern 33 feet of Harrington Road in favor of plaintiff Ciapala against the Van Fleterens. Plaintiffs now appeal, challenging the trial court's grant of summary disposition to the Road Commission and the Township of plaintiffs' claims.

## II. ANALYSIS

Plaintiffs contend that the trial court erred by granting the Road Commission and the Township summary disposition. Plaintiffs argue that they are entitled to quiet title to Harrington Road east of the guardrail because under Michigan's common law the Road Commission abandoned Harrington Road east of the guardrail. We disagree.

We review de novo a trial court's order granting or denying summary disposition. *Sunset Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 333; 999 NW2d 423 (2023). We also review de novo questions of statutory interpretation, *id*., and a trial court's decision in an action to quiet title. *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 467; 966 NW2d 729 (2021).

Summary disposition under MCR 2.116(C)(7) is warranted when the plaintiff's claim is barred by immunity granted by law or by another basis stated in that court rule. See *Spine Specialists of Mich, PC v MemberSelect Ins Co*, 345 Mich App 405, 408; 5 NW3d 108 (2022). We note that the Road Commission in this case moved for summary disposition under MCR 2.116(C)(7) on the basis that MCL 600.5821 bars a claim of common law abandonment. This Court has held, however, that MCL 600.5821 does not bar a claim of common law abandonment, *Scoby v Mitchell*, 350 Mich App 128, 141; 29 NW3d 680 (2024), which the trial court acknowledged on the record in this case. We therefore consider next whether summary disposition in this case was warranted under MCR 2.116(C)(10).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is warranted when no genuine issue of material fact exists. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When considering a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party and will find a genuine issue of material fact if the record leaves open an issue on which reasonable minds might disagree. *Id*.

Under Michigan common law, a road established for public use "may cease to be such by voluntary abandonment and non-use." *Gardens of Rest v Upper Mich Power & Light Co*, 322 Mich 153, 156; 33 NW2d 741 (1948), citing *Meyer v Meldrum*, 237 Mich 318, 322; 211 NW 658 (1927). To establish a claim of common law abandonment, there must be a showing of an intent to abandon the property, *Scoby*, 350 Mich App at 150, as well as "external acts putting that intention into effect." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

External acts that may demonstrate the lack of intent to relinquish the property include maintenance of the roadway and use of the roadway by the general public, while permitting obstructions to be placed on the roadway may demonstrate the intent to abandon the roadway. Specifically, maintenance of the road, even if insignificant, can preclude a finding of abandonment depending on the amount of maintenance necessary for the type of road in question. See *Villadsen v Mason Co Rd Comm*, 268 Mich App 287, 295-296, 304; 706 NW2d 897 (2005) (referring to the public work element of highway by user). The existence of obstructions in the claimed public roadway with the township's knowledge may be considered evidence of an intent to abandon a roadway. See *Ambs*, 255 Mich App at 656-657. In addition, a county's failure to certify a portion of a road may be evidence of an intent to abandon that portion of the road. See *id*. at 653-654.

Current and frequent use of the roadway by the general public may preclude a finding that a roadway has been abandoned. See *Ambs*, 255 Mich App at 657, citing *Baker v Roscommon Co Rd Comm*, 329 Mich 671, 680; 46 NW2d 579 (1951) (use of the road by the general public during the summer to access a lake was evidence of lack of intent to abandon) and *Roebuck v Mecosta Co Rd Comm*, 59 Mich App 128, 130, 132; 229 NW2d 343 (1975) (use of the road by the general public for hunting and recreation for the thirty-six years before the lawsuit was evidence of lack of intent to abandon). However, "[n]onuse alone is insufficient to prove abandonment." *Villadsen*, 268 Mich App at 304, quoting *Sparling Plastic Industries, Inc v Sparling*, 299 Mich App 704, 718; 583 NW2d 232 (1998).

In this case, the trial court found that the portion of Harrington Road east of the guardrail had not been abandoned by the Road Commission. The trial court reasoned:

> In this particular case, the Road Commission did place a traffic control device . . . which is a guard rail, a stop sign, and a no parking sign. It is also undisputed that they have always allowed pedestrian use to go east of the guardrail so I do find that the traffic control device is part of road maintenance and I find that it is actually part of road maintenance east of the guardrail as well because it limits the type of use that they want east of the guardrail. The intent of the Road Commission based on all the evidence appears to be to allow pedestrian use. It prevents vehicular use and allows pedestrian use from what they have done. They don't have a sign that says no trespassing, they don't have a sign that says do not enter, they do not have a sign that says no pedestrians beyond this point, or anything like that. Or end of road, road impassible, road closed, nothing like that. The only obstruction that was placed by the private citizens are the rocks. As Mr. Henn indicated, the Road Commission can leave the obstructions in if they are useful to them. In this particular case, Mr. Falls testified that those rocks are doing them a favor by helping prevent vehicular use.
>
> I also find that the use in this case has increased and that is also undisputed. The frequency of the current use has increased based on the Plaintiffs' own actions so I find that that use is not intermittent. . . . [Y]ou have to look at what is appropriate for this particular portion of a road or this particular road. In this case, the type of use that is occurring and has been occurring is exactly what you would expect at a road end for Lake Huron or a Great Lake. It is pedestrian use to go from the road to the lake. It is seasonal. That is exactly what I would expect and when you look

-4-

at the Baker case, when you look at [Ambs] in combination, [Ambs] seems to indicate that pedestrian use to access a lake, even seasonal, is not a viable common law abandonment claim here and that is exactly the type of use that has been occurring even more than that, we have had actually vehicular use. At least a motorcycle and a four-wheeler. So I do find this case is distinguishable as I mentioned. . . .

Here the guardrail and stop sign were placed by the Road Commission so I believe that actually helped prove their intent to keep the road, not abandon it. . . . [T]he type of maintenance that is occurring east of the guardrail is exactly what I would expect. I don't expect the Road Commission on the edge of Lake Huron to create a road so a car could get there, I don't expect them to pave a path. I would expect them to allow pedestrians to walk there. That is what has been going on in this state and certainly in this county since before I was born and is likely to continue happening at almost all of those road ends . . . . [S]o I am going to find that the Road Commission has not abandoned the road . . . Harrington Road east of the guardrail so the Plaintiffs' claims fail under common law abandonment. . . .

On appeal, plaintiffs argue that the Road Commission's intent to abandon Harrington Road east of the guardrail was demonstrated by the Road Commission's failure to certify the easternmost 204.6 feet of Harrington Road. Certification of a road refers to the process of a county selecting a system of roads and providing the system to the state transportation department to check, review, and approve. See MCL 247.652, MCL 247.654. If a road is decertified, i.e., not submitted with this system, then the county road commission may not spend tax collected for roads on that road. See MCL 224.20. Decertification of a road does not in and of itself establish abandonment but can support a finding of abandonment as part of a series of conscious, affirmative decisions to relinquish jurisdiction over a road. See *Ambs*, 255 Mich App at 654.

In this case, the trial court reasoned that the Road Commission would not have been likely to keep the eastern portion of Harrington Road certified after the enactment of Act 51 because the Road Commission would not have intended to use collected taxes to maintain that portion of Harrington Road for vehicular use. Accordingly, the trial court found that the Road Commission's non-certification of the 204.6 feet at the easternmost edge of Harrington Road did not demonstrate intent to abandon the eastern portion of Harrington Road. We agree. The decertification of 204.6 feet of Harrington Road does not appear to be a conscious, affirmative decision to relinquish any jurisdiction. The Road Commission maintained certification of 125.4 feet of Harrington Road immediately east of the guardrail, and there is no evidence that its non-certification of the remaining 204.6 feet, nearly all of which is sandy beach, evinces an intent to abandon Harrington Road east of the guardrail. The fact that the non-certified 204.6 feet primarily consists of beach reflects the nature of the land at issue rather than any intent to abandon it.

Plaintiffs also argue that the Road Commission's failure to maintain the road east of the guardrail is evidence of an intent to abandon the roadway. Plaintiffs argue that the placement of the guardrail and signage at the end of the gravel portion of Harrington Road does not constitute maintenance of Harrington Road east of the guardrail as that term is defined by MCL 247.660c. However, because plaintiffs' claim is one of common-law abandonment, the definitions in MCL 247.660c do not apply.

As the trial court discussed, the maintenance necessary depends upon the type of roadway, and in this case the portion of Harrington Road beyond the guardrail was intended only for pedestrian traffic to access the beach and Lake Huron. The Road Commission's act of placing the guardrail and stop sign at the end of the gravel portion of Harrington Road constituted adequate care of the roadway beyond the guardrail under the circumstances because it prevented vehicular use beyond the guardrail while not preventing pedestrian traffic. See *Villadsen*, 268 Mich App at 295-296 (the nature of the road may inform whether maintenance was sufficient to preclude a finding of intent to abandon the roadway).

Plaintiffs further argue that private citizens placed obstacles and improvements on the disputed portion of the roadway and that the Road Commission failed to remove the obstacles, which plaintiffs argue supports a finding of abandonment. Acquiescence to another party's assertion of dominion and control over a road may be evidence of abandonment. See *Ambs*, 255 Mich App at 653-654, in which the citizen plaintiffs were determined to have exercised sufficient control over the road to support a finding of abandonment by the road commission when the plaintiffs had plowed, maintained, and resurfaced the road, placed a gate across the road, stopped others from parking on the road, and another section of the road also had been abandoned.

In this case, the disputed portion of the roadway ends at a public beach on Lake Huron, no other part of Harrington Road has been abandoned, and the only obstructions placed in the disputed area were boulders that reportedly were placed by private citizens to prevent motorcycle and ATV traffic on the eastern portion of Harrington Road, consistent with the purpose of the road east of the guardrail being used only for pedestrian access to Lake Huron. Accordingly, the Road Commission's inaction regarding the boulders does not demonstrate an intent to abandon the eastern portion of Harrington Road, but is instead consistent with the intended use of the road.

Plaintiffs also argue that the public use of the eastern portion of Harrington Road was insufficient to preclude a finding of abandonment. As discussed, "[n]onuse alone is insufficient to prove abandonment," *Villadsen*, 268 Mich App at 305, quoting *Sparling Plastic Industries, Inc*, 299 Mich App at 718, while current and frequent use of a roadway by the general public may preclude a finding that a roadway has been abandoned, see *Ambs*, 255 Mich App at 657, citing *Baker*, 329 Mich at 681 (use of the road by the general public during the summer to access a lake is evidence of lack of intent to abandon). And while intermittent public use of a roadway does not necessarily preclude a finding of abandonment, see *Ambs*, 255 Mich App at 657-658, public use need not be "constant or continuous," and the nature of the road at issue informs how much public use will preclude a finding of abandonment. See *Villadsen*, 268 Mich App at 298-299.

In this case, the record supports that there was public use of the eastern portion of Harrington Road consistent with the nature of that part of Harrington Road as a pedestrian access to Lake Huron and its beach. The record includes testimony that the public used the eastern portion of Harrington Road to access the beach, and that this use increased after 2020, suggesting seasonal use of Harrington Road consistent with the location and type of road, which supports a finding that the road had not been abandoned.

To summarize, the record demonstrates that Harrington Road east of the guardrail is unimproved, terminating in Lake Huron, and open only to pedestrian traffic. The maintenance appropriate to the road is minimal, and the guardrail and the signage intended to restrict vehicular

traffic is not so insufficient that it indicates an intent by the Road Commission to abandon the road east of the guardrail. Similarly, given the nature of the road, the decision not to recertify part of the road east of the guardrail does not indicate an intent to abandon the road, nor does the fact that the Road Commission did not remove the rocks placed in the area by private citizens to discourage vehicular traffic east of the guardrail.[2] The record supports the trial court's finding that public use of the eastern portion of Harrington Road has been consistent seasonal use. The trial court's determination that plaintiffs failed to prove abandonment of any portion of Harrington Road is supported by the record.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[2] If plaintiffs are correct that the decision to decertify a portion of Harrington Road east of the guardrail indicates an intent to abandon the road, it stands to reason that the continued certification of another portion of the road east of the guardrail would indicate the opposite intent. At best this factor is neutral for plaintiffs' case.