VILLADSEN v MASON COUNTY ROAD COMMISSION

Docket No. 255955. Submitted July 12, 2005, at Lansing. Decided July 19, 2005. Approved for publication September 27, 2005, at 9:10 a.m. Leave to appeal sought.

Alfred Villadsen, Donald and Marilyn Villadsen, and Jack Mickevich brought an action in the Mason Circuit Court against the Mason County Road Commission and Sherman Township, seeking to quiet title to a portion of Darr Road in Sherman Township, Mason County. The road commission filed a third-party complaint against the plaintiffs, the township, the Department of Natural Resources, the Mason County Drain Commissioner, and individuals who owned property near the disputed portion of Darr Road, seeking a declaration that the disputed portion of the road was a public highway. The court, Richard I. Cooper, J., issued an opinion and order for the road commission and the township, concluding that the disputed portion was a highway by user. The plaintiff appealed.

The Court of Appeals *held*:

The trial court did not err in holding that the disputed portion of Darr Road was a public road under the highway-by-user statute, MCL 221.20.

1. The four elements required for establishing a public highway pursuant to the highway-by-user statute are a defined line, use and maintenance of the road by public authorities, public travel and use for ten consecutive years without interruption, and open, notorious, and exclusive public use. The burden of proof rests with the governmental agency claiming a highway by user.

2. The trial court correctly determined that the disputed portion had a defined line of travel with definite boundaries despite the existence of occasionally wet areas. Aerial photographs and the trial court's viewing of the disputed portion support the trial court's determination that the occasionally wet areas have not changed the course of the roadway.

3. The trial court correctly determined that the disputed portion was used and maintained by public authorities. Although public authorities must engage in more than infrequent, minor

maintenance to satisfy the second element of highway by user, the nature of the road and the amount of traffic must be considered. Also, work on other stretches of the road may be considered in determining whether this element is satisfied. The evidence established that the disputed portion was maintained by the road commission. A roadway is reasonably passable even when the weather renders it temporarily impassible or when a detour is necessary to render it passable. The disputed portion was reasonably passable.

4. The trial court did not err in determining that the disputed portion was subject to open, notorious, and exclusive public use for ten consecutive years. The record indicated such use by those engaged in recreational activities or in business activities related to a farm. The existence of "road closed," "no outlet," and "dead end" signs, which were largely ignored, did not affect the usage of the disputed portion.

5. The trial court correctly determined that the defendants have not abandoned the disputed portion. A roadway established for public use may cease to be such by voluntary abandonment and nonuse. Both an intent to relinquish the property and external acts putting that intention into effect must be shown to prove abandonment. In this case, there was no evidence of an intent to relinquish the property or evidence of external acts done by the defendants indicating an intent to abandon the property.

Affirmed.

HIGHWAYS — HIGHWAY BY USER.

The highway-by-user statute requires proof of four elements for the establishment of a public highway: a defined line; that the highway was used and worked on by public authorities; public travel and use for ten consecutive years without interruption; and open, notorious, and exclusive public use (MCL 221.20).

*Anderson, Stull & Associates* (by *David J. Anderson*) for the plaintiffs.

*Young, Graham & Elsenheimer, P.C.* (by *Kevin A. Elsenheimer*), for the Mason County Road Commission.

*Gockerman, Wilson, Saylor & Hesslin, P.C.* (by *Richard M. Wilson, Jr.*), for Sherman Township.

Before: O'CONNELL, P.J., and SCHUETTE and BORRELLO, JJ.

PER CURIAM. Plaintiffs appeal as of right an order in which the trial court held that a particular section of Darr Road that is located in Sherman Township in Mason County and that abuts plaintiffs' property is a highway by user under MCL 221.20. We affirm.

At issue in this case is ownership of a one-mile section of Darr Road. Darr Road is a north-south road that the trial court characterized as "an established but intermittent section line road [that extends] for 19 or 20" miles. The disputed portion of the road lies between Fountain Road and Mavis Road, which are both east-west roads, and it begins one-quarter mile south of Fountain Road and ends one-quarter mile north of Mavis Road. The one-quarter mile section of Darr Road located south of Fountain Road and extending to the beginning of the disputed portion of the road is an improved county road. The Lincoln River bridge is located on this one-quarter mile section of the road. Plaintiffs do not contend that this one-quarter mile section of Darr Road or the one-quarter mile section immediately north of Mavis Road is not a public road. The dispute is limited to the one-mile section described above.

Plaintiff Alfred Villadsen[1] owns approximately 400 acres of land that borders the northern portion of the disputed section of Darr Road to the east. Plaintiff Jack Mickevich owns approximately 80 acres of land that borders the southern portion of the disputed section of

---

[1] Plaintiffs Donald and Marilyn Villadsen are Alfred Villadsen's parents. They owned Alfred's home and real property from 1931 until 1977. At the time of trial, they lived across from Alfred on the disputed portion of Darr Road.

Darr Road to the west. While plaintiff Villadsen uses the portion of Darr Road in dispute to gain access to his property, plaintiff Mickevich does not.

Although a small portion of Darr Road is paved, most of it is a dirt and gravel road, with the exception of the approximately one-mile section that is the subject of the dispute in this case. The disputed section of the road was described at trial as a two-track road. A Mason County map labels the disputed portion of the road a trail. The disputed portion of Darr Road is not paved and, for the most part, is not covered with gravel. Moreover, it is undisputed that at certain wet times of the year, the portion of the road becomes temporarily impassable because of the existence of the two wet areas. However, over the years, detours have developed around both wet areas. Testimony at trial revealed that for years people have been getting stuck in the wet areas of the disputed portion of the road. One of the wet areas is near plaintiff Alfred Villadsen's property on the northern portion of the road in dispute. The other wet area, which is known as the blueberry bog, is larger and poses greater difficulty for vehicles attempting to pass than the first wet area; the blueberry bog is located more to the south-east section of the disputed portion of the road.

There was testimony that since the 1950s there have been "dead end," "no outlet," or "road closed" signs on or near the disputed portion of Darr Road at different times. Testimony revealed that defendant road commission had placed "road closed" signs on the disputed portion of the road in 2002, and these signs were present at the time of trial. Evidence also established that there were "no outlet" signs on or near the disputed portion of the roadway at the time of trial. However, the record was unclear regarding who had

placed the "no outlet" signs or any of the other signs that had been placed on or near the disputed roadway over the years.

On July 30, 2003, plaintiffs filed a complaint seeking to quiet title to the road in question and enjoin defendants from entering the property. Defendants each filed an answer and affirmative defenses, arguing, among other things, that the disputed portion of Darr Road was a public road either under the highway-by-user statute, MCL 221.20, or that the road had been created by dedication and acceptance. In addition, defendant road commission filed a third-party complaint against plaintiffs, Sherman Township, other individuals who owned property near the disputed portion of Darr Road, the Department of Natural Resources, and the Mason County Drain Commissioner, seeking a declaratory judgment that the disputed portion of Darr Road was a public highway, either through dedication and acceptance or under the highway-by-user statute.

The trial court issued an opinion and order finding that defendants established the four elements necessary to conclude that the portion of Darr Road in question was a highway by user under MCL 221.20.[2]

Plaintiffs argue that the trial court erred in holding that the one-mile portion of Darr Road in dispute was a public road under the highway-by-user statute. We disagree.

This Court reviews de novo the legal requirements for establishing a highway by user, but reviews the trial

---

[2] The order also addressed defendant's third-party complaint. As it relates to plaintiffs, the order simply effectuated plaintiffs' stipulation on the record that the one-quarter mile sections of Darr Road just south of Fountain Road and just north of Mavis Road were public roads under the highway-by-user statute. Plaintiffs do not appeal this portion of the order.

court's factual findings for clear error. *Kalkaska Co Bd of Co Rd Comm'rs v Nolan*, 249 Mich App 399, 401; 643 NW2d 276 (2002). A finding is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.*

The highway-by-user statute, MCL 221.20, provides:

> All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods in width on each side of such lines.

The highway-by-user statute treats property subject to it as impliedly dedicated to the state for public use. *Kalkaska Co, supra* at 401. " 'Highway by user' is a term that is used to describe how the public may acquire title to a highway by a sort of prescription where no formal dedication has ever been made." *Kent Co Rd Comm v Hunting*, 170 Mich App 222, 230; 428 NW2d 353 (1988). Establishing a public highway pursuant to the highway-by-user statute requires four elements: (1) a defined line, (2) that the road was used and worked on by public authorities; (3) public travel and use for ten consecutive years without interruption, and (4) open, notorious, and exclusive public use. *Kalkaska Co, supra* at 401-402. The burden of proof rests with the governmental agency claiming a highway by user. *Cimock v Conklin*, 233 Mich App 79, 87 n 2; 592 NW2d 401 (1998). If all four elements are established,

MCL 221.20 raises a rebuttable presumption that the road is four rods, or 66 feet, wide. *Kent Co, supra* at 231.

Regarding the first element, plaintiffs contend that the existence of the two wet areas on the disputed portion of Darr Road preclude a finding that there was a defined line because the existence of the wet areas requires persons traversing the road to take detours that extend outside the right-of-way. In addition, plaintiffs contend that roads that change with the elements do not have a defined line. The trial judge noted in his opinion that he personally visited and observed the disputed portion of Darr Road on September 8, 2003. According to the trial judge's opinion, based on his personal observation, the disputed portion of the road "visually appears to run in a true and straight north/south line across Plaintiff's farm property and in a true straight line south through the wetland area and it continues as a straight line through the woods, across the blueberry bog area, all the way to Mavis Road." The trial court specifically stated that "the roadbed in the wetland was distinctly visible." In addition, the trial court characterized any "meandering" of the road as being "minimal" and not exceeding "four or five feet in direction." Regarding the detours around the wet areas, the trial court observed that, although there was a two-track bypass around the smaller wet area that carried "virtually all of the present traffic," the detour was a "trail of convenience" that "does not negate the fact that the roadbed is easily visible and available for use during dry periods." In addition to his personal observations of the area in dispute, the trial judge also relied on aerial photographs that were submitted as exhibits in concluding that the section of the roadway in dispute was defined despite the existence of bypasses around the wet areas.

In order to satisfy the defined line element of a highway by user, there must be "a defined line of travel with definite boundaries . . . ." *Rigoni v Michigan Power Co*, 131 Mich App 336, 343; 345 NW2d 918 (1984). In *Kalkaska Co, supra* at 402, after reviewing the aerial photographs relied upon by the trial court in concluding that there was a defined line, this Court held that clear visibility in aerial photographs was sufficient to prove the existence of a defined line. Similarly, in this case, after reviewing the exhibits relied upon by the trial court, although, as the trial court observed, there are "fade-out areas not as readily detected via the aerial [photographs]," we are convinced that the trial court did not clearly err in finding the existence of a defined line in this case. We defer to the trial court's superior ability to determine whether the roadway was defined inasmuch as the trial judge personally observed the disputed portion of the roadway and the detours. "As trier of the facts, a trial judge has wide discretion in his determination of the facts." *Keller v Locke*, 62 Mich App 591, 592; 233 NW2d 666 (1975). It is particularly inappropriate for this Court to substitute its judgment on a finding such as this when the trial judge personally observed the disputed section of the roadway in question.

Plaintiffs argue that roads that change with the elements do not have a defined line. In support of this argument, plaintiffs rely on the Supreme Court's decision in *Thunder Mountain Hts Land Corp v Van Buren Co Rd Comm*, 342 Mich 88; 68 NW2d 765 (1955). In *Thunder Mountain*, the Supreme Court refused to hold that a road was a public road in part because the roadway, which, like the roadway in this case was also characterized by some testimony as being a trail, ran alongside a river and overflow from the river caused the road not to follow a "definite or established route." *Id.*

at 90. We reject plaintiffs' reliance on *Thunder Moun-tain* because the facts of *Thunder Mountain* are distinguishable from the facts of this case. In *Thunder Mountain* the course of the roadway changed over the years because of the overflow from the river, whereas, in this case, the existence of the wetlands has not changed the course of the roadway; rather, the wetlands merely require the taking of detours at certain times of the year. The roadway in this case, unlike the roadway in *Thunder Mountain,* follows a "definite or established route" despite the detours. *Id.*

Regarding the second element necessary to establish a highway by user, plaintiffs argue that infrequent and minor maintenance will not make a public highway out of a private road. According to plaintiffs, there are only three documented instances of public work on the portion of the roadway in question, and this is insufficient to establish that the road was used and worked on by public authorities. Moreover, plaintiffs contend that the fact that the portion of the road in dispute is not reasonably passable is evidence that defendant road commission's use and work on the disputed road was not sufficient to establish this element of a highway by user. Again, we disagree.

Plaintiffs are correct that public authorities must engage in more than infrequent, minor maintenance to satisfy this element of a highway by user. See *Keller, supra* at 592-593. However, the nature of the road must also be considered in determining whether this element is satisfied. See *Pulleyblank v Mason Co Rd Comm*, 350 Mich 223, 229; 86 NW2d 309 (1957). Because the disputed portion of the road in question was a quiet country two-track road with only a minimal amount of traffic, defendant road commission's work on the road was not required to be extensive to satisfy the public

work element of a highway by user. "Work on country roads . . . is adjusted also to the needs of local traffic and local inhabitants." *Id.* While we recognize that the work done by defendant on the portion of the road in dispute was not extensive, given the nature of the road, defendant was not required to expend large amounts of money improving and maintaining it or large amounts of time working on it to satisfy this element of a highway by user.

Moreover, plaintiffs' contention that the trial court could only consider defendants' use and work on the disputed portion of Darr Road in determining whether defendants established this element of a highway by user is incorrect. In fact, the trial court was permitted to consider the maintenance efforts and work directed at areas of Darr Road that are not in dispute rather than limiting its concentration to the one-mile section of Darr Road that is in dispute. " 'It is not essential that every part of a highway should be worked in order to evidence the intention of the public authorities to accept and maintain the entire highway.' " *Kalkaska Co, supra* at 402, quoting *Neal v Gilmore,* 141 Mich 519, 527; 104 NW 609 (1905). Therefore, the trial court did not err in considering work performed by defendants on portions of Darr Road outside the disputed portion of the roadway in this case.

Plaintiffs argue that establishing the second element of a highway by user requires defendant to maintain the road in a manner that renders it reasonably passable. A party asserting a highway by user is required to show acceptance of the road in question; however, the degree of maintenance required to demonstrate such acceptance is merely enough to keep the road in a "reasonably passable condition." *Boone v Antrim Co Bd of Rd Comm'rs,* 177 Mich App 688, 694; 442 NW2d 725

(1989). Defendant does not contest that the section of the roadway in question was not always passable. At trial, there was testimony that the road sometimes becomes temporarily impassable during certain wet times of the year and that vehicles attempting to travel over the road would sometimes become stuck. There was also testimony that mud boggers,[3] who were prone to driving on the disputed section of the roadway, contributed to the impassability of the road.

In its opinion, the trial court observed that the portion of Darr Road in dispute "would not be passable in places during the spring and possibly into the summer due to snow melt off and spring rains and at times in the late fall due to November rains at the location of the wetland marsh and the bog area." The trial court opined that one would need a four-wheel-drive vehicle to successfully pass through the bog area. Nevertheless, the trial court, relying on the Supreme Court's opinions in *Indian Club v Lake Co Rd Comm'rs*, 370 Mich 87; 120 NW2d 823 (1963); *Pulleyblank, supra; Alton v Meeuwenberg*, 108 Mich 629; 66 NW 571 (1896), characterized the existence of the two wet areas as "a localized problem" that "would not defeat a finding that there has been public user."

We hold that the disputed portion of the roadway was reasonably passable. Our Supreme Court has concluded that roadways are reasonably passable even when the weather renders the roadway temporarily impassable or when a detour is necessary to render a roadway passable. In *Indian Club, supra*, at 91, our Supreme Court held that a "trail" was reasonably passable, despite the fact that it was not passable "after the

---

[3] Mud bogging was described in the record as a recreational activity in which people put extra large tires on their vehicles and then drive them through the mud.

winter snows." Similarly, the Supreme Court's decision in *Pulleyblank* supports the conclusion that the existence of a detour would not preclude a finding of a highway by user. In *Pulleyblank, supra* at 231, the Supreme Court stated:

> At the trial some effort was made by appellants to show that the Benson road, at a certain point, really included a detour . . . , the theory (disputed by defendants) being that Benson road itself was always impassable at this point and that detour was necessary. This theory was apparently not persuasive to the chancellor . . . and we are not persuaded he was in error therein.

In light of the Supreme Court's decisions in *Indian Club* and *Pulleyblank* and the fact that the trial judge personally observed the wet areas and the detours and determined that the section of the roadway was reasonably passable despite the existence of the wetlands, we conclude that the trial court did not clearly err in concluding that the portion of Darr Road in dispute was reasonably passable.

Regarding the final requirements of a highway by user that there be open, notorious, and exclusive public travel and use for ten consecutive years, plaintiffs argue that the existence of "road closed," "dead end," and "no trespassing" signs posted on or near the disputed portion of the roadway since the 1950s means that any use of the disputed portion of Darr Road would constitute a trespass and would be insufficient to establish the public use element of a highway by user. We disagree.

The public use element "requires evidence of use of the roadway claimed to be a highway by user by members of the *general* public, not merely by employees of a governmental entity, on a repeated basis for the requisite ten-year period." *Cimock, supra* at 87 (emphasis in original). However, "this does not require con-

stant or continuous use by the general public over the course of a ten-year period." *Id.* at 87 n 3. Moreover, the law does not fix the number of people who must travel upon a road to satisfy this element. *Kalkaska Co, supra* at 403. "[I]t is sufficient if the road was traveled as much as the circumstances of the surrounding population and their business required." *Id.* Furthermore, a road used by the public for gaining access to areas for hunting and recreation may satisfy the public use requirement. *Id.* However, the road must be used by members of the general public and not merely the friends and family of people living on the road. See *Cimock, supra* at 87-88.

The trial court found that the public's use of the portion of the road in question satisfied the last two elements necessary to establish a highway by user. Specifically, the trial court noted that the record was "replete with examples of hunter usage, horseback riding, snowmobile riding, cross-country skiers, four-wheel drive vehicle usage, and bog runner usage" and concluded that "public usage has been open and notorious and although not high numerically, said farming and recreational usage has been shown to have lasted from the 1930's until the present."

We find that the record supports the trial court's assertion that the final two elements necessary to establish a highway by user were present. Ron Campbell, who owned plaintiff Alfred Villadsen's property from 1977 to 1997, testified that during that time, he saw people use the portion of Darr Road in dispute for deer and raccoon hunting, horseback riding, snowmobiling, and bog running. In addition, Campbell testified that he farmed the property he owned at the time and that buyers would come to his farm to purchase oat and wheat seed, hay, and calves. Although, as the trial court

observed, the number of people who traversed the road was not high, the law does not fix the number of people who must travel upon a road to satisfy this element. *Roebuck v Mecosta Co Rd Comm*, 59 Mich App 128, 131; 229 NW2d 343 (1975). We hold that the portion of Darr Road in dispute was traveled as much as the circumstances of the surrounding population, and their business, required. *Id.* The only evidence of any business was Campbell's testimony regarding members of the public coming to his farm to purchase items. Other than the small amount of business traffic generated by Campbell's farm, the disputed roadway was a quiet country two-track road, which was used largely by the public for recreational purposes. Such recreational use is sufficient to satisfy the public use element. *Id.* Given the character of the road and the circumstances of the surrounding population, there was sufficient public use of the disputed roadway to satisfy the public use element of a highway by user.

Furthermore, we reject plaintiffs' contention that the existence of "road closed," "dead end," and "no outlet" signs on the disputed roadway or near the ends of the disputed roadway negates this element of highway by user. According to plaintiffs, as a result of the placement of the "road closed" signs, any member of the public who traveled on the disputed portion of the road was a trespasser. Plaintiffs further contend that because of the signs, the public could not legally use the disputed roadway because it was closed to the public. There were also "no outlet" signs in place on each end of the disputed portion of the road at the time of trial. Although it is unclear from the record if defendant road commission or someone else put up most of the signs, it was not contested that the signs existed. According to testimony at trial, "dead-end" signs are no longer used, but they were used in the past "to indicate that there

was a problem up ahead." Testimony indicated that a "road closed" sign would indicate that the use of caution is necessary, but would not necessarily mean that the road is closed to all vehicular traffic and would not render travel on such a road illegal. In addition, a "no outlet" sign indicates that it would be difficult to get through a road.

The trial court's conclusions "that a road closed sign is intended to serve as a warning the road may be impassable" and that "it is not illegal to travel on such a closed road" are supported by the record. Although the record was not clear regarding who placed most of the signs, even if defendant road commission erected all the signs, such conduct would constitute evidence of public maintenance of the disputed road under the second element of a highway by user. In any event, regardless of who installed the signs, it is clear from the record that they were regularly ignored by the members of the public who used the road in dispute over the years. In other words, the public used the roadway in spite of the signs. Therefore, because the public used the roadway, the public use element of the highway by user was established in spite of the existence of signs.

We further hold, contrary to plaintiffs' argument on appeal, that the second and third elements necessary to establish a highway by user existed during the same ten-year period. In fact, we conclude that the evidence established that the public use and the public work and maintenance elements of a highway by user were established for a 20-year period, from approximately 1977 to 1997.

Regarding the public work and maintenance element, Richard Hansen, the road commission's assistant superintendent from 1968 through about 1984 and its superintendent from 1984 until 1987, testified that he

drove and inspected the disputed portion of the road every year as a part of his normal duties. Hansen also asserted that in the late 1970s or early 1980s, the road commission hauled gravel north of the Freeman drain bridge on the disputed portion of Darr Road. Hansen further asserted that the road commission did some plowing of at least a portion of the disputed roadway. Hansen also testified that in 1986, after a heavy rain, the road commission made repairs to the Lincoln River bridge. Finally, Hansen testified that the road commission consistently pulled out vehicles that had become stuck in the disputed portion of the roadway. In addition, David Hasenbank, the Mason County Drain Commissioner, testified that in 1987 the road commission cleaned out the Freeman Drain. Furthermore, Ron Campbell testified that the road commission cut brush in the ditches on the disputed roadway just about every year. He also asserted that the road commission graded and snowplowed the area that used to be his driveway north to Fountain Road.

Regarding the public use element, Campbell's testimony, which was detailed above, established that there was public use of the disputed portion of the roadway from 1977 to 1997 for recreational purposes and for business associated with Campbell's farm.

On the basis of the testimony of Richard Hansen, David Hasenbank, and Ron Campbell, we conclude that the evidence did establish that the public use and public authorities' work and use of the disputed roadway did occur during the same 20-year period, from 1977 to 1997.

To the extent that plaintiffs suggest that the trial court erred in relying on testimony that defendants might need the disputed portion of the road in the future in concluding that the section of the road in

question was a highway by user, we disagree. Plaintiffs' appellate brief does not cite any case law or statutory authority to support their contention that the trial court's alleged reliance on the testimony regarding the future public use of the road was improper. A party who fails to brief the merits of an alleged error has abandoned the issue on appeal. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id.*, quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Even if the trial court did note that defendants might need the disputed portion of the road in the future for some public use, this would not alter the fact that defendants established the elements necessary to establish a highway by user under MCL 221.20.

Plaintiffs next argue that even if the portion of Darr Road at issue did, at some point, become a highway by user, defendants abandoned the disputed section of the road by failing to maintain it and by putting up "road closed" signs. We disagree.

This Court reviews for clear error a trial court's factual findings following a bench trial; however, legal conclusions are reviewed de novo. *Essexville v Carrollton Concrete Mix, Inc*, 259 Mich App 257, 265; 673 NW2d 815 (2003).

"A roadway established for public use may cease to be such by voluntary abandonment and nonuse." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003). To prove abandonment, "both an intent to relinquish the property and external acts

putting that intention into effect must be shown by the party asserting abandonment." *Id.* "Nonuse alone is insufficient to prove abandonment." *Sparling Plastic Industries, Inc v Sparling,* 229 Mich App 704, 718; 583 NW2d 232 (1998).

We hold that the trial court properly concluded that defendants had never abandoned the portion of Darr Road in dispute. At trial, there was no evidence that defendants intended to relinquish the property and there was no evidence regarding any external acts done by them indicating an intent to abandon the disputed roadway. Plaintiffs contend that defendants' failure to improve, maintain, or make the road reasonably passable, as well as the placement of signs at each end of the disputed portion of the road, constituted external acts done by the road commission to show its intent to relinquish the property. However, mere nonuse is insufficient to prove abandonment, *Sparling Plastic, supra* at 718, and, even if it were, the record does not support plaintiffs' contention that the road commission failed to maintain the disputed portion of the roadway. Although it did not engage in an abundance of maintenance and work on the disputed roadway over the years, the record reveals that the road commission's care and maintenance of the roadway was sufficient and consistent with the character of the roadway. The record reveals that the road commission maintained the disputed roadway as it would any country two-track road. This maintenance, while not large in scope or expense, was sufficient to preclude a finding of abandonment. Moreover, the evidence at trial does not support plaintiffs' contention that the road commission's placement of signs at each end of the disputed roadway evidences defendants' intent to abandon or close the disputed roadway. Therefore, we hold that the

trial court did not clearly err in concluding that defendants had not abandoned the portion of Darr Road in question.

Affirmed.