*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGE DERNIS and MARIA DERNIS,

        Plaintiffs-Appellees,

v

AMOS FINANCIAL LLC,

        Defendant-Appellee,

and

PREMIER BANK OF WILMETTE, DR. ZULFIKAR ESMAIL, SHAMIM ESMAIL, FEDERAL DEPOSIT INSURANCE CORPORATION, STEARNS BANK NA, ANDREW J. ABRAMS,

        Defendants,

and

STEFANOS PEROUSTIANIS, Individually and as Cotrustee of the DESPINA PEROUSTIANIS TRUST, MARIA PEROUSTIANIS DERNIS, Cotrustee of the DESPINA PEROUSTIANIS TRUST, and HELEN PEROUSTIANIS PARISI, Cotrustee of the DESPINA PEROUSTIANIS TRUST,

        Intervenors-Appellants.

UNPUBLISHED
July 29, 2025
2:16 PM

No. 366942
Allegan Circuit Court
LC No. 2015-054718-CZ

GEORGE DERNIS and MARIA DERNIS,

        Plaintiffs-Appellants,

-1-

v

No. 366943
Allegan Circuit Court
LC No. 2015-054718-CZ

AMOS FINANCIAL LLC,

        Defendant-Appellee,

and

PREMIER BANK OF WILMETTE, DR.
ZULFIKAR ESMAIL, SHAMIM ESMAIL,
FEDERAL DEPOSIT INSURANCE
CORPORATION, STEARNS BANK NA,
ANDREW J. ABRAMS,

        Defendants,

and

STEFANOS PEROUSTIANIS, Individually and as
Cotrustee of the DESPINA PEROUSTIANIS
TRUST, MARIA PEROUSTIANIS DERNIS,
Cotrustee of the DESPINA PEROUSTIANIS
TRUST, and HELEN PEROUSTIANIS PARISI,
Cotrustee of the DESPINA PEROUSTIANIS
TRUST,

        Intervenors-Appellees.

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

In Docket No. 366942 of these consolidated appeals,[1] intervenors appeal as of right the trial court's order granting summary disposition to defendant Amos Financial, LLC (Amos), under MCR 2.116(C)(10) (no genuine issue of material fact). In Docket No. 366943, plaintiffs appeal the same order for similar reasons. We affirm the trial court's order, but remand for the trial court to address the issue of sanctions under MCR 2.119(E).

I. FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this case are set forth in this Court's prior opinion:

---

[1] *Dernis v Amos Fin LLC*, unpublished order of the Court of Appeals, entered August 15, 2023 (Docket Nos. 366942 and 366943).

-2-

In 2004, plaintiff George Dernis obtained a loan from defendant Premier Bank of Wilmette to finance the purchase of a grocery store and shopping center in Illinois. To secure the 2004 loan, George and his wife Maria Dernis, along with Stefanos and Despina Peroustianis (Maria's parents) through the Despina Peroustianis Trust, granted Premier Bank a mortgage on their real property located at 741 Center Street, Douglas, Michigan, among other collateral. In 2008, George purchased a property located at 19-23 Water Street, in Douglas, Michigan, and financed the purchase through a loan from Premier Bank. The Water Street property served as collateral for the 2008 loan, and in addition, the loan was cross-collateralized with other loans, thereby also including the Center Street property as collateral. However, with regard to these loans and the mortgages on the Center Street and Water Street properties, plaintiffs and intervenors assert a host of wrongdoing by Premier Bank, including allegations that Premier Bank forged documents, some of which resulted in cross-collateralization. They also maintain that Premier Bank agreed to release the properties as collateral.

At one time, George owned, or partly owned, several corporate entities, and the corporate entities in turn owned several grocery stores in Illinois. In connection with these grocery stores, George had numerous business dealings with Premier Bank, involving more than $23 million in loans. However, by George's own admissions, he made his last loan payment—on any loan obtained from Premier Bank—in February 2011. Unfortunately, the grocery stores went into bankruptcy, and George and Stefanos both also declared bankruptcy. Plaintiffs and intervenors attribute their financial problems and the financial downfall of the grocery stores to wrongdoing by Premier Bank, including various fraudulent and criminal acts.

On March 23, 2012, the Illinois Department of Financial and Professional Regulation Division of Banking closed Premier Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. In November 2014, the FDIC, acting as receiver for Premier Bank, sold the loans relating to the Michigan properties to Amos Financial as part of a "loan pool" sale. The FDIC also granted Brian Donegan, general counsel for Amos Financial, a limited power of attorney, and acting under the power of attorney, Donegan assigned the mortgages on the Center Street and Water Street properties to Amos Financial. In February 2015, Amos Financial pursued foreclosure by advertisement on both Michigan properties.

In March 2015, plaintiffs filed the current case against Amos Financial to prevent the foreclosures on the Michigan properties and to obtain monetary damages, including damages related to the loss of the grocery stores in Illinois.[3]

* * *

With regard to Amos Financial, plaintiffs and intervenors essentially maintained that Amos Financial could be held liable for purchasing "bad debt" and "continuing" the fraud by attempting to foreclose despite knowledge of Premier Bank's fraudulent conduct. Additionally, plaintiffs and intervenors disputed the validity of the FDIC's assignment to Amos Financial, contending that Donegan

lacked authority and was a "robo-signer" without requisite personal knowledge to execute the assignments. Aside from matters involving Premier Bank and the FDIC, plaintiffs and intervenors also challenged Amos Financial's compliance with the foreclosure statute in terms of the notice given regarding the foreclosures, the propriety of foreclosing when other civil actions remained pending in Illinois, and the ability to foreclosures by advertisement under Illinois law.

The case has a lengthy procedural history. Most relevant to this appeal, in 2017, the trial court entered a default against Amos Financial and granted summary disposition to plaintiffs and intervenors because Amos Financial's attorney failed to appear at a hearing on cross-motions for summary disposition. The trial court later denied Amos Financial's motion to set aside the default. The trial court later entered two orders, transferring the Michigan properties—which by that time had been sold at a sheriff's sale to Amos Financial—back to plaintiffs and intervenors. Following a six-day hearing on damages, on September 12, 2019, the trial court then entered an order regarding damages, denying economic damages but awarding exemplary damages as noted earlier. In orders dated December 5, 2019, the trial court also awarded partial attorney fees and costs to plaintiffs and intervenors.

---

[3] Aside from Amos Financial, plaintiffs' and intervenors' complaints named several other defendants, none of whom are parties to this appeal. The FDIC removed the case to federal court and was thereafter dismissed on jurisdictional grounds because plaintiffs failed to exhaust administrative remedies. See *Dernis v Amos Fin*, 701 Fed App'x 449, 454-456 (CA 6, 2017); *Dernis v Amos Fin, LLC*, unpublished order of the United States District Court for the Western District of Michigan, entered May 13, 2016 (Case No. 1:16-cv-64). . . . [*Dernis v Amos Fin, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket Nos. 350862, 352014, and 350902), pp 3-5 (irrelevant footnotes omitted).]

Relevant here, this Court held in the prior appeals that the trial court lacked jurisdiction over the majority of plaintiffs' and intervenors' claims because they failed to exhaust their administrative remedies under the Financial Institution Reform Recovery and Enforcement Act of 1989, PL 101-73 (FIRREA). This Court remanded the case to the trial court to address the few remaining claims over which it had jurisdiction.

On remand, plaintiffs moved for relief from judgment, with which intervenors concurred, arguing that they did, in fact, exhaust their administrative remedies, and submitting a proof of the claim form and a notice of disallowance from the FDIC as proof. Plaintiffs and intervenors accused Amos of committing fraud on the trial court, implying that Amos committed a discovery violation by failing to provide the relevant documents in response to plaintiffs' document request, and for misrepresenting that plaintiffs had not exhausted their administrative remedies despite knowing they had.

The trial court denied plaintiffs' motion, concluding that it did not have the authority to grant relief contrary to this Court's opinion. Relevant here, the trial court also determined that plaintiffs' and intervenors' arguments regarding sanctions were not properly raised before it at the

time and declined decide the issue. Amos later filed a new motion for summary disposition, which the trial court granted. Plaintiffs and intervenors now appeal.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiffs and intervenors first argue that the trial court erred by denying their motion for relief from judgment and by failing to consider plaintiffs' new evidence. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for relief from judgment for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Cox v Hartman*, 322 Mich App 292, 298; 911 NW2d 219 (2017).

## B. ANALYSIS

We conclude that the trial court correctly decided that it lacked authority to grant relief from this Court's judgment. "[A] trial court's power is limited to granting relief from *its own* judgment; it cannot grant relief from a judgment of this Court." *Sumner v Gen Motors Corp*, 245 Mich App 653, 666; 633 NW2d 1 (2001).

> The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court. When an appellate court remands a case without instructions, a lower court has the same power as if it made the ruling itself. However, when an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order. It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court. [*K & K Const, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005) (quotation marks and citations omitted).]

In our prior opinion, this Court gave "clear instructions" concerning the scope of its remand order. This Court limited the trial court's consideration to "only claims that involve independent conduct by Amos Financial" in its postpurchase conduct. *Dernis*, unpub op at 11. This Court identified which claims remained under the trial court's jurisdiction:

> Specifically, in Count 1 of their respective complaints, plaintiffs and intervenors alleged, in relevant part, that the foreclosure by advertisement proceedings initiated by Amos Financial in Michigan were improper because (1) Illinois law should apply and Illinois does not permit foreclosure by advertisement, (2) MCL 600.3204 does not permit foreclosure when there is a pending action (and lawsuits filed in Illinois remained pending), and (3) there were errors in the notices of foreclosure given by Amos Financial. These particular claims relating to Amos Financial's postpurchase efforts to foreclose on the Water Street and Center Street properties are the *only* claims by plaintiffs and intervenors that involve independent

-5-

conduct by Amos Financial that does not relate to the acts or omissions of Premier Bank or the FDIC as receiver. [*Id.*]

This Court then remanded the case to the trial court "for a determination of Amos Financial's liability on the merits of the limited claims within the circuit court's jurisdiction." *Id*. at 3. Thus, the trial court lacked the authority to grant relief from this Court's judgment, and lacked the authority to act outside the scope of this Court's remand instructions. *K & K Const*, 267 Mich App at 544-545; *Sumner*, 245 Mich App at 666.[2]

Notwithstanding the trial court's lack of authority to reach the merits of plaintiffs' argument, plaintiffs and intervenors insist that new evidence demonstrates that plaintiffs did exhaust their administrative remedies. But even the substance of these arguments lack merit. First, plaintiffs did not dispute the assertion that they did not exhaust their administrative remedies in the prior appeals. Instead, they argued that they were not required to do so. *Dernis*, unpub op at 7 ("plaintiffs do not dispute that they failed to make any attempt to pursue FIRREA's administrative process. They contend, however, that the jurisdictional requirements in the FIRREA do not apply to this case . . . ."). Because plaintiffs and intervenors implicitly conceded the issue before, and fail to explain on appeal their reasons for doing so, we decline to consider their proposed evidence. We also find plaintiffs' and intervenors' argument that Amos hid plaintiffs' own actions from them disingenuous for several reasons. First, regardless of whether Amos was in possession of the documents in question, there is no dispute that plaintiffs had them as well. Second, we fail to see how Amos committed a discovery violation by failing to provide the documents because the discovery request was for documents pertaining to communications between Amos and other parties, while the documents in question were communications between plaintiffs and the FDIC. Given these failures, and the fact that they did not dispute the issue until this Court issued its prior opinion, plaintiffs and intervenors are not entitled to relief on this issue.[3]

## III. SURVIVING CLAIMS ON REMAND

Plaintiffs and intervenors next argue that the trial court erred by granting summary disposition to Amos because (1) there were various defects in Amos's notices of foreclosure; (2) the foreclosures violated Illinois law; and (3) the foreclosures violated the one-action rule. We disagree.

---

[2] For this reason, plaintiffs' argument that the trial court failed to consider that some other counts in their complaint should have survived on remand also fails. This Court specifically remanded the case for consideration on specified issues. The trial court lacked the authority to consider issues beyond the scope of this Court's instructions. *K & K Const*, 267 Mich App at 544-545; *Sumner*, 245 Mich App at 666.

[3] For this reason, we lack jurisdiction over, and will not consider, the parties' argument addressing whether the Center Street property was released as collateral in 2007 and how it impacts the current case. We also need not consider the parties' arguments pertaining to whether the alleged forgeries in the documents rendered them void *ab initio*.

## A. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "Issues of statutory interpretation are questions of law that this Court reviews de novo." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012).

## B. NOTICE DEFECTS

Plaintiffs and intervenors allege various defects in the notices of foreclosure rendered the foreclosures voidable. They contend the notices were defective because they: (1) failed to name the real party in interest; (2) failed to list the actual amount owed; (3) misrepresented that there were no pending lawsuits seeking collection on the debt; and (4) misidentified the date of assignment to Amos.[4] These arguments lack merit.

Notices of foreclosure must list specific items set forth in MCL 600.3212. A defect in a notice of foreclosure for failing to include the required items under this statute renders the foreclosure sale voidable. *Arnold v DMR Fin Servs, Inc*, 448 Mich 671, 674 n 3; 532 NW2d 852 (1995). But, "[w]here no harm is suffered as a result of the defect, there is no reason to void the sale." *Id*. The "harm" in this situation is that the mortgagor would have been in a better position to preserve their interest had notice been proper. *Jackson Inv Corp v Pittsfield Prods, Inc*, 162 Mich App 750, 755-756; 413 NW2d 99 (1987).

First, plaintiffs and intervenors incorrectly assert that the notice of foreclosure for the Center Street property was defective because it incorrectly named Stefanos and Despina Peroustianis in their individual capacities instead of the real party in interest, the Despina Peroustianis Trust (the trust).[5] The parties required to be named in a notice of foreclosure are listed

---

[4] The parties also claim Amos lacked the proper documents to establish a proper chain of title, and make an unexplained reference to the three Change of Terms agreements for the Water Street property. Plaintiffs abandoned any argument regarding the Change of Terms agreements by failing to brief the merits of their argument. *Villadsen v Mason Co Rd Comm*, 268 Mich App 287, 303; 706 NW2d 897 (2005). Additionally, this Court already held that consideration of the chain of title argument was improper because it was barred under 12 USC 1821. *Dernis*, unpub op at 11 n 11.

[5] Stefanos and Despina conveyed their interests in the Center Street property to the trust before the notices were sent.

in MCL 600.3212(1)(a). This subsection requires only that the notice list "[t]he names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any[.]" MCL 600.3212(1)(a) does not require a subsequent transferee of a property to be listed. The mortgagors listed on the Center Street mortgage are George, Maria, Stefanos, and Despina, and Amos's notice of foreclosure named them in the notice. Thus, there is no error.

Plaintiffs and intervenors next argue, unconvincingly, that the foreclosure notices were defective because they listed incorrect debt amounts due. Under MCL 600.3212(1)(c), a notice of foreclosure must list "[t]he amount claimed to be due on the mortgage on the date of notice." Plaintiffs and intervenors argue that the debt listed as being owed—$3,453,281.33—was incorrect. In support of their argument, they reference four different amounts listed as what they owed in other situations and at other times. None of their arguments are availing. First, plaintiffs and intervenors draw this Court's attention to an amount of $831,492.48 listed as being owed in a motion Amos filed in Stefanos's bankruptcy proceeding. However, this discrepancy is unhelpful because the amount Amos listed in the bankruptcy proceeding concerned a different portion of the debt than the amount listed in the notices. The debt Amos identified in its motion was the amount Stefanos had accrued in default for failing to pay. By contrast, the $3,453,281.33 amount identified in the notices concerns the entire amount due as of the date of the notices. The two amounts are not irreconcilable.

Plaintiffs and intervenors point to two other amounts alleged at different times as being owed, neither of which demonstrate that Amos listed an incorrect amount on the notices. The first amount is debt Premier Bank alleged was owed in one of the Illinois lawsuits, and is irrelevant to the correct amount alleged by *Amos* in this proceeding. As for the other amount, a January 2012 Bill of Sale from Amos represented that, at the time, plaintiffs and intervenors owed $2,796,392.68. It is unsurprising that this amount is less than the amount alleged in the notices ten years later. The issue underlying this entire case is that plaintiffs and intervenors failed to pay off their debts, and, as a result, the debt continued to accrue until Amos foreclosed on the properties. Plaintiffs and intervenors fail to explain how the debt amounts are necessarily inconsistent.

Next, plaintiffs and intervenors argue that the notices falsely contended that there were no pending suits to recover on the debt on which Amos was foreclosing. Yet, plaintiffs fail to explain how this alleged false statement somehow constitutes a defect in the notices under MCL 600.3212. Furthermore, as will be addressed below, this argument lacks merit because the statement was not false.

Lastly, plaintiffs make the meritless argument that the notices were defective because the date of assignment listed in the notices reflected the wrong date. This argument, like the real-party-in-interest argument, fails because MCL 600.3212 does not require the date of assignment be listed in the notice. Only "[t]he date of the mortgage and the date the mortgage was recorded[]"

are required to be listed under the statute. MCL 600.3212(1)(b). Thus, regardless of whether the correct assignment dates were listed, the notices were statutorily compliant and thus not deficient.[6]

## C. CHOICE OF LAW

Plaintiffs and intervenors also argue that the foreclosures were invalid because Illinois law forbids foreclosures by advertisement, and the promissory notes underlying the 2004 and 2008 debts had choice-of-law provisions indicating that Illinois law applied. While this is true, the promissory notes were the basis on which Amos foreclosed on the properties. Instead, the right to foreclose on the properties was provided by the properties' mortgages, and each mortgage has its own choice-of-law provision. The provisions are similar between the two mortgages, and provide that they are generally to be governed by federal Illinois law. But they both also specify that procedural matters relating to the enforcement of the lender's rights under the mortgage are to be governed by Michigan law. Indeed, each mortgage explicitly lists foreclosure by advertisement as one of the lender's "rights and remedies" in the event of a default. Thus, the procedure to enforce this right is governed by Michigan law.

## D. THE ONE-ACTION RULE

Lastly, plaintiffs and intervenors argue that Amos violated Michigan's one-action rule by foreclosing on the properties when there were still lawsuits pending to recover the debts in Illinois. Michigan's one-action rule "provides that a foreclosure by advertisement is permitted only if an action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage. . . ." *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 292; 818 NW2d 460 (2012), quoting MCL 600.3204(1)(b) (quotation marks and brackets omitted). "Under Michigan law, a creditor generally may simultaneously proceed against a guarantor and foreclose on a mortgaged property because the guaranty is an obligation separate from the mortgage note." *Greenville Lafayette*, 296 Mich App at 288. In other words, it is the underlying *debt* that cannot be the same, not the underlying *collateral*.

> The intention of the legislature with respect to the foreclosure statutes was to force an election of remedies by a mortgagee concerning a single debt: i.e., the same mortgagee cannot simultaneously maintain a lawsuit for judicial foreclosure and a foreclosure by advertisement, because it would allow for double recovery on the same debt. [*Id*. (quotation marks, citation, and brackets omitted).]

At the time Amos sent its notices of foreclosure, it is undisputed that there were two cases pending in Illinois state court involving one or more of the plaintiffs and intervenors. However, neither of these cases concerned the *debt* on which Amos sought to foreclose at issue in this case. The Illinois cases concerned the 2004 loan and other, unrelated debts, while Amos sought to foreclose on the basis of the parties' defaults on the 2008 loan. The promissory note underlying

---

[6] Because none of the alleged defects are true defects, we need not address whether any of the defects prejudiced plaintiffs or intervenors.

this loan specified that the Water Street and Center Street properties were to serve as collateral for the loan. Thus, Amos was entitled to foreclose on both properties at issue on the basis of the parties' default on the 2008 loan.[7]

## IV. SANCTIONS

Finally, plaintiffs and intervenors argue that the trial court erred by failing to consider sanctions under two different court rules. We disagree that the trial court erred in failing to consider sanctions under MCR 2.603(D)(4), but agree the trial court erred by failing to consider sanctions under MCR 2.119(E).

### A. STANDARD OF REVIEW

"We review the trial court's decision to impose sanctions for an abuse of discretion." *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 450; 540 NW2d 696 (1995). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Cox*, 322 Mich App at 298. "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Interpretation of a court rule is a question of law that we review de novo. *CAM Const v Lake Edgewood Condon Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

### B. ANALYSIS

First, plaintiffs' argument that they are entitled to sanctions under MCR 2.603(D)(4) lacks merit. MCR 2.603(D)(4) states: "An *order setting aside* the default or default judgment must be conditioned on the defaulted party paying the taxable costs incurred by the other party in reliance on the default or default judgment[.]" (Emphasis added). Plaintiffs' argument is misplaced, because the trial court never entered an order that set aside the default; this Court vacated the order in its entirety. Thus, MCR 2.603(D)(4) is inapplicable.

But we agree that the trial court erred by failing to consider sanctions against Amos under MCR 2.119(E)(4), which states:

(4) Appearance at the hearing is governed by the following:

---

[7] Whether George Dernis had the authority to secure the 2008 loan with Center Street's mortgage without consulting the Peroustianises cannot be considered, because it concerns acts or omissions by Premier Bank. The trial court, and, by extension, this Court, lack jurisdiction to consider whether the promissory note itself is enforceable due to fraud or other concerns. 12 USC 1821(d)(13)(D). Thus, the trial court, and, again, this Court by extension, are limited to the facial terms of the note itself. Therefore, regardless of whether the Center Street property was released as collateral for the 2004 note, it also served as collateral for the 2008 note.

(a) A party who, pursuant to subrule (D)(2), has previously rejected the proposed order before the court must either

(*i*) appear at the hearing held on the motion, or

(*ii*) before the hearing, file a response containing a concise statement of reasons in opposition to the motion and supporting authorities.

A party who fails to comply with this subrule is subject to assessment of costs under subrule (E)(4)(c).

(b) Unless excused by the court, the moving party must appear at a hearing on the motion. A moving party who fails to appear is subject to assessment of costs under subrule (E)(4)(c); in addition, the court may assess a penalty not to exceed $100, payable to the clerk of the court.

(c) If a party violates the provisions of subrule (E)(4)(a) or (b), the court shall assess costs against the offending party, that party's attorney, or both, equal to the expenses reasonably incurred by the opposing party in appearing at the hearing, including reasonable attorney fees, unless the circumstances make an award of expenses unjust.

In the prior appeal, this Court held that Amos was subject to sanctions under MCR 2.119(E). *Dernis*, unpub op at 18. The rule itself provides that the trial court "shall" assess costs against the nonappearing party. The word "shall" indicates mandatory performance. *Wolfenbarger v Wright*, 336 Mich App 1, 31; 969 NW2d 518 (2021). Thus, while this Court's prior opinion did not expressly order the trial court to assess sanctions under MCR 2.119(E), its finding that Amos was subject to such sanctions, coupled with the mandatory term "shall" in the rule itself, demonstrates that the trial court was required to consider sanctions under the rule on remand. Its failure to do so was an abuse of discretion.[8]

The trial court's grant of summary disposition is affirmed, but we remand for the trial court to assess sanctions against Amos under MCR 2.119(E)(4). We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett

---

[8] We decline to consider plaintiffs' final argument on appeal that the trial court erred by entering an inaccurate order because plaintiffs abandoned it by failing to properly support their argument. *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).