*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JBV, Minor.

UNPUBLISHED
June 25, 2019

No. 344157
Oakland Circuit Court
Family Division
LC No. 2017-854319-AM

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

This adoption matter regards the decision of the superintendent of respondent, Michigan Children's Institute (MCI), to deny consent for petitioners to adopt their grandson (the minor child). Petitioners appeal as of right the circuit court's opinion and order, which was entered pursuant to § 45 of the Michigan Adoption Code, MCL 710.45, holding that the superintendent's decision to deny consent to adopt in this case was not arbitrary and capricious. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the termination of the parental rights of the minor child's biological parents. During the termination of parental rights (TPR) proceedings, a lawyer-guardian ad litem (LGAL) was appointed for the minor child, and she continued in that role throughout these proceedings. The petitioners' request to have the minor child placed with them during the child protective proceedings was denied and the minor child was placed with a foster family. The relevant background facts concerning the TPR proceedings are undisputed and were aptly summarized by the trial court as follows:

> Petitioners are the maternal grandfather and maternal grandmother of the minor child. . . . [He] was experiencing withdrawal symptoms at birth and was removed from his birth mother's custody due to the prenatal drug exposure and because [the minor child's] half-siblings were in foster care. [The minor child] spent five weeks in the hospital after his birth and, upon his release in October 2015, was placed in a licensed foster home. During the child protective proceeding, Petitioners requested that [the minor child] be placed in their home; the request was denied and [the minor child] remained with the foster parents.

The parental rights . . . were terminated on July 22, 2016, and [the minor child] was committed to the Michigan Children's Institute (MCI).[1] Both the Petitioners and the foster parents filed a petition with the MCI requesting the MCI superintendent's consent to adopt [the minor child].

The superintendent denied petitioners consent to adopt, issuing a written decision, which, in pertinent part, explained as follows:

### Background Information

* * *

In addition to the current caregivers [i.e., the foster family,] the maternal grandfather and his wife, [i.e., petitioners], have requested to be considered for adoption. However the agency is not recommending [petitioners] for the adoption of [the minor child].

### Factors considered

The following factors were considered in making this decision:

*The length of time the children has* [sic] *lived in a stable, satisfactory environment and the desirability of maintaining continuity.*

[The minor child] was exposed in utero to illegal substances and he spent five weeks in the hospital diagnosed with Neonatal Abstinence Syndrome. While [he] is currently functioning within the normal range for his age, prenatal drug exposure places him at higher risk for future and developmental difficulties. [The minor child] is described as a friendly, outgoing and energetic child. He has resided with [the foster family] since he was five weeks of age and he is currently 1 ½ years old. This is the only home and family [the minor child] has known and he identifies [the foster parents] as his parents. [The minor child] has developed a secure attachment to his foster parents and he looks to them for comfort and reassurance. They have also demonstrated the ability to meet all of his physical, emotional and developmental needs. Therefore it is in [the minor child's] best interests to remain in this stable and satisfactory environment.

*Willingness and ability of a relative to assure the physical and emotional well-being of the children on a permanent basis.*

---

[1] In a separate order, the court also terminated the parental rights of the minor child's mother to the minor child's three older half-siblings. This Court affirmed both orders in *In re Villalobos*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2017 (Docket No. 334501).

. . . [Petitioners] reside in a five bedroom home with their two children, ages sixteen and eighteen. [Petitioners] have the physical space and the financial means to provide for another child. However they previously, requested placement of [the minor child] and were assessed but denied in April of 2016. This denial was due to concerns expressed by the local Department of Health and Human Services [DHHS] and the Oakland County Prosecutor's office regarding previous allegations of physical and sexual abuse within [petitioners'] home. Both incidents were investigated but were not substantiated. However the result has been that [petitioners] have a very limited relationship with [the minor child], having only seen him a couple of times since his birth. [The minor child] has resided with the [foster family] since he was five weeks old. It would be difficult for a child [of his] age to be separated from his primary caregivers and to transition to a new home and family. While [petitioners] are relatives, the decision to grant or withhold request must always [be] based on the best interests of the child.

*The psychological relationship that exists between the children and the prospective adoptive parent.*

[Petitioners] have a very limited psychological relationship with [the minor child], having only been able to visit with him a few times from August of 2015 until December of 2016. [The minor child] is just 1 ½ years of age and he could not be expected to understand the relationship between them. However it is hoped that [petitioners] will be able to have some involvement with [the minor child] in the future.

**Decision**

After reviewing all the information that was provided, it is the decision of the MCI office that it is not in the best interests of the child(ren) to be adopted by the family listed above. Therefore, the request of [petitioners] to adopt [the minor child] is denied.

Pursuant to § 45 of the Michigan Adoption Code, MCL 710.45, petitioners sought the trial court's review of the superintendent's decision. Petitioners alleged that the superintendent's decision had been arbitrary and capricious and that it should be overturned on that basis.

At the ensuing hearing, petitioners sought to introduce testimony concerning certain out-of-court statements allegedly made by the LGAL.[2] Upon objection, the trial court excluded such testimony on grounds that it lacked relevance and constituted inadmissible hearsay. Petitioners subsequently sought to admit a transcript of a prior hearing, during the TPR proceedings, as proof that the LGAL had made statements allegedly evincing bias or prejudice against petitioners. The trial court excluded the proffered transcript on grounds of relevance.

---

[2] The LGAL categorically denied having made the statements in question.

Ultimately, after a lengthy § 45 hearing, which occurred on numerous dates over more than five months, the trial court decided that petitioners had failed to prove, by clear and convincing evidence, that the superintendent's challenged decision was either arbitrary or capricious. This appeal ensued.

## II. ANALYSIS

## A. EXCLUDED EVIDENCE

On appeal, petitioners first argue that the trial court abused its discretion by excluding the witness testimony concerning the LGAL's out-of-court statements and the transcript from the TPR proceedings. We disagree.

"Evidentiary rulings are reviewed for an abuse of discretion; however, we review de novo preliminary questions of law affecting the admission of evidence, e.g., whether a statute or rule of evidence bars admissibility." *In re Martin*, 316 Mich App 73, 80; 896 NW2d 452 (2016). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes" or is premised upon an error of law. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

As this Court recently noted in *In re Conservatorship of Brody*, 321 Mich App 332, 348; 909 NW2d 849 (2017):

> Generally, all relevant evidence is admissible. MRE 402; *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008). "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003), citing MRE 401. "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Tobin v Providence Hosp*, 244 Mich App 626, 637-638; 624 NW2d 548 (2001), citing MRE 403. When a trial court serves as the trier of fact in a case, it is presumed to consider evidence for its proper purpose.

The trial court excluded the LGAL's statements under MRE 403, not 401 for relevance. The trial court noted that the excluded evidence would have been "cumulative," that its introduction would unduly delay the already lengthy proceedings, and that it represented part of petitioners' attempt to "retry" the TPR case. In other words, the trial court held that, even if the disputed evidence *was* relevant and was otherwise admissible, it would nevertheless be excluded under MRE 403, which provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . *or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence*." (Emphasis added.)

Petitioners do not contest that ruling on appeal, failing to argue that exclusion was improper under MRE 403. Thus, they have abandoned any such argument. See *Villadsen v*

*Mason Co Rd Comm*, 268 Mich App 287, 303; 706 NW2d 897 (2005), aff'd on other grounds 475 Mich 857 (2006).

## B.  ADOPTION DECISION

Petitioners also argue that the trial court committed clear legal error by deciding that they failed to present clear and convincing evidence that the superintendent's decision was arbitrary and capricious.  We disagree.[3]

As this Court observed in *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008):

> Pursuant to MCL 710.45, a family court's review of the superintendent's decision to withhold consent to adopt a state ward is limited to determining whether the adoption petitioner has established clear and convincing evidence that the MCI superintendent's withholding of consent was arbitrary and capricious. Whether the family court properly applied this standard is a question of law reviewed for clear legal error.  *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994) [(opinion by BRICKLEY, J.)].

See also *In re CW*, 489 Mich 855; 795 NW2d 16 (2011) (applying the clear error standard when reviewing the circuit court's decision regarding a § 45 motion).  Under the "clear legal error" standard, "[w]hen a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Fletcher*, 447 Mich at 881 (opinion by BRICKLEY, J.).

Under MCL 400.203(1), the MCI's superintendent "shall represent the state as guardian of each child committed" to DHHS "beginning with the day the child is admitted and" generally "continuing until the child is 19[.]"  "The superintendent . . . has the power to make decisions on behalf of a child committed to the institute," MCL 400.203(2), and "is authorized to consent to the adoption . . . of any child who may have been committed to the institute," MCL 400.209(1). "Consent by the superintendent to the adoption of a state ward is required before the family court can approve a prospective adoption.  MCL 710.43(1)(b)." *In re Keast*, 278 Mich App at 423.

With regard to the "general purposes" of the Adoption Code, MCL 710.21a provides:

> The general purposes of this chapter are:

---

[3] We decline to address or decide petitioners' unpreserved arguments concerning due process, which were not duly raised below.  See *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 275; 803 NW2d 151 (2011) ("this Court does not decide cases on constitutional grounds when doing so can be avoided"); *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("Michigan generally follows the 'raise or waive' rule of appellate review"); *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987) (noting that the discretion to reach and decide unpreserved issues should be exercised "quite sparingly").

(a) To provide that each adoptee in this state who needs adoption services receives those services.

(b) To provide procedures and services that will safeguard and promote the best interests[4] of each adoptee in need of adoption and that will protect the rights of all parties concerned. If conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount.

(c) To provide prompt legal proceedings to assure that the adoptee is free for adoptive placement at the earliest possible time.

(d) To achieve permanency and stability for adoptees as quickly as possible.

(e) To support the permanency of a finalized adoption by allowing all interested parties to participate in proceedings regarding the adoptee.

The seminal decision construing MCL 710.45 is *In re Cotton*, 208 Mich App 180; 526 NW2d 601 (1994), in which this Court held:

The fact that the Legislature in drafting the statute limited judicial review to a determination whether consent was withheld arbitrarily and capriciously, and further required that such a finding be based upon clear and convincing evidence, clearly indicates that it did not intend to allow the probate court to decide the adoption issue de novo and substitute its judgment for that of the representative of the agency that must consent to the adoption. Rather, the clear and unambiguous language terms of the statute indicate that the decision of the representative of the agency to withhold consent to an adoption must be upheld unless there is clear and convincing evidence that the representative acted arbitrarily and capriciously. Thus, the focus is not whether the representative made the "correct" decision or whether the probate judge would have decided the issue differently than the representative, but whether the representative acted arbitrarily and capriciously in making the decision. Accordingly, the hearing under § 45 is not, as petitioners seem to suggest, an opportunity for a petitioner to make a case relative to why the consent should have been granted, but rather is an opportunity to show that the representative acted arbitrarily and capriciously in withholding that consent. It is only after the petitioner has sustained the burden of showing by clear and convincing evidence that the representative acted arbitrarily and capriciously that the proceedings may then proceed to convincing the probate court that it should go ahead and enter a final order of adoption. [*Id*. at 184.]

---

[4] For these purposes, the phrase "best interests of the adoptee" is statutorily defined by MCL 710.22(g).

In other words, the superintendent's denial of consent to adopt in a given case cannot be held as arbitrary and capricious "if there exists *a* good reason for it," and this remains true even if there are good reasons militating in favor of the opposite result. *In re Keast*, 278 Mich at 435 (emphasis added).

As a threshold consideration, petitioners argue that we should hold that the minor child's initial placement with the foster family was contrary to public policy and that, as such, the trial court clearly erred by considering the results of that placement in these adoption proceedings. In other words, that the trial court made a legal error by failing to find that the superintendent's consideration of the length of the foster placement, the bond established during the foster placement, and where such placement was against public policy, was erroneous. We are mindful that the child in this case was not placed with the petitioners' due to completely unsubstantiated claims of abuse. Therefore, the long-term placement with the foster family and the attachment formed there were significant factors in the superintendent's decision in addition to the unsubstantiated claims. We agree that the legislature has expressed a preference for relative placement during child protective proceeding. MCL 722.954a. Our Supreme Court has repeatedly echoed the principle that relative placement during the pendency of abuse and neglect cases is this state's public policy. However, our Supreme Court has decided that the statutory "preference for placement with relatives" that applies during child protective proceedings does not apply in post-termination proceedings such as these. See *In re COH*, 495 Mich 184, 198; 848 NW2d 107 (2014).

Our task is to determine whether the trial court committed clear legal error by incorrectly choosing, interpreting, or applying the law. We conclude that it did not. On the contrary, after reviewing the pertinent evidence, the trial court issued a well-reasoned opinion concluding that petitioners had failed to present clear and convincing evidence that the superintendent's decision was either arbitrary or capricious. Thus, the trial court properly chose, interpreted, and applied the law.

Petitioners argue that the *superintendent* made the factually incorrect decision. We are not asked nor are we permitted to decide if we agree with the superintendent's decision. However, the scope of this Court's review is for clear legal error on behalf of the trial court. This Court's review is not de novo. We must decide, as noted before, whether the trial court clearly erred by incorrectly choosing, interpreting, or applying the law. See *In re Keast*, 278 Mich App at 423.

Judicial review of the MCI superintendent's adoption decisions is narrow. Based on the opinions of numerous agency professionals—who specialize in such matters—the superintendent ultimately decided that the minor child's interests would be best served by permitting the foster family, rather than petitioners, to adopt. The trial court was left to decide if the petitioners proved by clear and convincing evidence that the MCI acted without a good reason. The trial court noted that the petitioners' expert conceded that the social worker's description of the interaction between the child and the foster parents was indicative of the child's strong attachment to them that formed a basis for the MCI's best interests analysis. Under the circumstances, rational minds might disagree, but this does not transform the superintendent's decision into one that was arbitrary and capricious. See *In re ASF*, 311 Mich App 420, 436; 876 NW2d 253 (2015) ("[W]e are not insensitive to the fact that petitioners indisputably took

excellent care of ASF for 3½ years beginning when she was only nine months old, and the fact that ASF is closely bonded to petitioners as well as to her sister, SF. Given ASF's close bond to petitioners and to her sister, who remains in petitioners' care, reasonable minds might well question the wisdom of denying petitioners consent to adopt and of removing ASF from the continuity of a stable family setting. See MCL 710.22(g). But neither this Court nor the circuit court reviews the matter de novo, and it is not for us to say whether the superintendent made the 'correct' decision."). As in *In re ASF*, we see no basis here—let alone clear and convincing evidence—that would allow us to conclude that the trial court erred in finding that the petitioners did not meet their burden of proving the superintendent's decision was either arbitrary or capricious.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan